■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT J. MINK, JR., Appellant. [699 NYS2d 742] —Cardona, P. J. Appeal from a judgment of the County Court of Columbia County (Leaman, J.), rendered March 19, 1999, upon a verdict convicting defendant of the crime of sexual abuse in the first degree.

Defendant was charged in a three-count indictment with sexual abuse in the first degree. After a jury trial, he was found guilty of sexual abuse in the first degree under the first count

and acquitted on the remaining charges. Defendant was sentenced to an indeterminate prison term of 1½ to 3 years and this appeal ensued.

The charges stem from an incident which occurred during the early morning hours of February 28, 1998 at Val-Kin Restaurant (hereinafter the restaurant), owned by defendant's family, located in the Village of Valatie, Columbia County. As he had done on past occasions following a night of drinking, defendant invited five friends, including the victim, back to the restaurant which was not open at the time. Defendant gave all but one of his friends an alcoholic beverage at the bar. After someone lit a cigar, a couple left the bar and went into the dining room. Thereafter, the cigar smoker went outside on the patio and was joined by another person, leaving defendant and the victim alone in the bar area. One of the two people seated in the dining room heard noise emanating from the kitchen so they entered it and observed the victim against a counter with her pants down. Defendant was facing her with his pants down and his hands on both sides of her. Defendant appeared to have the victim pinned against the counter. The victim was heard to say "no, Butch stop it". With that, one of the friends asked defendant what he was doing and defendant backed away from the victim, who was observed to be shaking and on the verge of crying.

According to the victim, when she and defendant were alone in the bar he made comments about her hair color and moved over to where she was sitting, stating that "there was only one way to find out what color [it] was". She indicated she was nervous and stood up, at which time defendant began pushing her through a swinging door into the kitchen area. Holding her with one arm and pushing her upper body along the corridor leading to the back of the kitchen, he "ripped [her] jeans open", put his hand inside her pants and "touch[ed] [her] vagina". The victim testified that she told him to stop but that he prevented her from getting away. As she struggled "he put his fingers inside of [her] vagina". She contended that he pinned her against the counter, dropped his pants, told her to touch his penis and pulled her hand into contact with his penis.

Defendant testified that when they were alone in the bar he asked her whether she was still dating a particular person. She responded in the negative and stated, in substance, that she wanted to reveal herself to him. According to defendant, the victim began walking backward into the kitchen, enticing him to follow. He denied placing his hand in her pants at that point and indicated he did not push, shove or grab her as they

walked along the corridor leading into the back of the kitchen. He testified that he followed her, walking with his crutch,[1] until they reached the back kitchen area where he admitted that he touched her pubic area, but denied pinning her against the counter or inserting his fingers into her vagina. Defendant maintains that the touching was consensual.

Other evidence revealed that both defendant and the victim were inebriated, that no yells, screams or sounds of a struggle were reported by anyone present, and that the victim did not report the incident to the police until April 28, 1998. Furthermore, there was proof that, as a result of his injury, defendant received an award of $2.4 million.

Defendant contends that County Court erred when he was precluded from presenting testimony from the victim's former boyfriend. He argues that the boyfriend would have testified that after the incident, and before contacting the police, the victim told him she was looking for financial compensation from defendant and wanted his help in getting the money.

Generally, "a party may not introduce extrinsic evidence on a collateral matter solely to impeach credibility" (*People v Alvino*, 71 NY2d 233, 247; *see, People v Hagin*, 238 AD2d 714, 716, *lv denied* 90 NY2d 894). However, that general rule is not applied where the issue to which the evidence relates is a material one, that is, one that the jury must decide (*see, People v Knight*, 80 NY2d 845, 847). Here, in our view, the victim's statement about financial compensation tends to impeach her credibility with respect to a material issue requiring resolution by the jury, i.e., whether defendant did, in fact, subject her to sexual contact by forcible compulsion (*see*, Penal Law § 130.65 [1]). We also note that the defense was not required to question the victim about financial motivation as a prerequisite to the use of the extrinsic evidence (*see, People v Brown*, 26 NY2d 88, 94; Fisch, NY Evidence § 469, at 307 [2d ed]). Accordingly, we agree with defendant that the evidence of the victim's financial motive to fabricate was not just a matter of collateral impeachment and, therefore, should have been received.

Based upon the above determination, we now examine whether the error was harmless. During its deliberations, the jury requested read backs of the victim's testimony and those

---

1. In 1986, defendant sustained an injury to his left leg. As a result, he walks with a limp and, although he can walk very slowly without a crutch, he testified that he walks with a single crutch and has been doing so for the past three years because if he does not his back goes out. The victim testified that defendant did not use a crutch during the commission of the alleged crimes.

of the two witnesses who entered the kitchen during the incident. The jury also requested reinstruction from County Court on forcible compulsion. Thereafter, the jury found that defendant forcibly touched the victim's vagina with his hand (count one), but acquitted him of the second and third counts of sexual abuse in the first degree as well as the lesser included offense of sexual abuse in the third degree under each of those counts. We cannot conclude that the victim's credibility on the issue of forcible compulsion was not a key factor in the jury's determination convicting defendant under the first count. Furthermore, we cannot say that the prosecution's evidence, taken as a whole, was so overwhelming that there was no significant probability that the jury would have acquitted defendant on the first count if the testimony concerning financial compensation was received into evidence. We do not find the error harmless (*see, People v Crimmins,* 36 NY2d 230). Accordingly, we reverse defendant's conviction and remit the matter for a new trial.

Since there is to be a new trial, we find it appropriate to address one of defendant's remaining contentions. County Court allowed the prosecution to question a defense witness about the witness's failure to come forward with exculpatory information[2] prior to trial, without laying a proper foundation. That was error (*see, People v Dawson,* 50 NY2d 311, 321, n 4).

Peters, Spain, Carpinello and Graffeo, JJ., concur. Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Columbia County for a new trial.

---

**2.** The witness testified about a conversation he had with the victim after the incident in which she allegedly told him that nothing serious had happened and that defendant had not used physical force.