■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICHARD KELLEY, Appellant. [918 NYS2d 45]—

The verdict was not against the weight of the evidence (*see People v Danielson*, 9 NY3d 342, 348-349 [2007]). There is no basis for disturbing the jury's credibility determinations. The jury convicted defendant of a course of sexual conduct against his daughter, committed when she was 11 and 12 years old, but acquitted him of rape and incest charges pertaining to three later incidents. Although, in performing weight of evidence review, we may consider these acquittals (*see People v Rayam*, 94 NY2d 557, 563 n [2000]), we find that the mixed verdict does not warrant a different conclusion. Aside from the possibility that it chose to extend leniency, the jury could have reasonably found that the evidence of the three specific incidents was not as strong as the evidence of the prior course of conduct.

The court properly denied defendant's request for preclusion of DNA evidence introduced late in the trial, or alternatively for a mistrial. The victim testified that defendant customarily ejaculated on a towel during the sexual acts at issue. The victim's mother gave a particular towel to the police. Defense counsel, who had been told by the prosecutor that there was no incriminating DNA evidence in the case, interviewed the DNA technician assigned to the case in contemplation of calling her as a defense witness. In the interview, the technician revealed that although other items had been tested, the towel had not. Defense counsel then inquired of the prosecutor as to why the towel had not been tested. This led to testing of the towel, which showed that it contained defendant's DNA and that of a female other than the victim.

The court properly exercised its discretion in permitting the People to introduce the results of DNA testing of the towel on their rebuttal case. There was no discovery violation, because the applicable statute (CPL 240.20 [1] [c]) governs the timing of the disclosure of test results demanded by the defense, not the timing of the tests. Until the towel was tested, no report of DNA evidence existed, and the People were not required to turn over a report that did not exist.

In any event, there was no bad faith by the People, who were unaware of the laboratory's failure to test the towel, and no prejudice to defendant (*see People v Jenkins*, 98 NY2d 280, 284 [2002]; *People v Kelly*, 62 NY2d 516, 520 [1984]). Defendant argues that he structured his defense in reliance on the prosecutor's misrepresentation that there was no incriminating DNA evidence. However, we do not find that any significant component of the defense resulted from any such reliance, or that the belated revelations about the towel caused any irreparable damage. On the contrary, counsel affirmatively used the

DNA evidence to argue that defendant had not committed the charged crimes, since the female DNA on the towel did not match the victim's, as would have been expected according to her testimony.

Although defense counsel's phone call alerted the prosecutor to the fact that no testing had occurred, this did not deprive defendant of the effective assistance of counsel (*see People v Benevento*, 91 NY2d 708, 713-714 [1998]; *see also Strickland v Washington*, 466 US 668 [1984]). Counsel's action met an "objective standard of reasonableness" (*Strickland* at 688). It was appropriate for counsel to be concerned as to why the towel had not been tested, given that the absence of DNA evidence on the towel would have been helpful to the defense, and to follow up with an inquiry. In any event, defendant has not shown a reasonable probability that counsel's alleged error affected the outcome of the trial or undermined confidence in the result (*id*. at 694). As noted, the DNA evidence on the towel cut both ways. On the one hand, it provided some relatively minor corroboration of the victim's testimony regarding a detail of the sexual offenses. On the other hand, the presence of defendant's DNA on a towel in his own home was not particularly incriminating, and, as defense counsel argued, the presence of DNA from an unidentified female rather than from the victim tended to be exculpatory.

The court properly permitted the People to impeach defendant's testimony with statements made by his counsel in his presence at arraignment (*see People v Brown*, 98 NY2d 226 [2002]; *People v Gary*, 44 AD3d 416 [2007], *lv denied* 9 NY3d 1006 [2007]). The statements reasonably appeared to be attributable to defendant, even if the attorney was also speaking from her personal knowledge regarding some matters.

We perceive no basis for reducing the sentence. Concur—Tom, J.P., Sweeny, Renwick, Freedman and Manzanet-Daniels, JJ.