[972 NE2d 111, 948 NYS2d 870]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICHARD KELLEY, Appellant.

Argued May 1, 2012; decided June 12, 2012

### APPEARANCES OF COUNSEL

*Office of the Appellate Defender*, New York City (*Kerry S. Jamieson, Richard M. Greenberg* and *Rosemary Herbert* of counsel), for appellant.

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Sylvia Wertheimer* and *Patrick J. Hynes* of counsel), for respondent.

### OPINION OF THE COURT

MEMORANDUM.

The order of the Appellate Division should be modified, by vacating the convictions for course of sexual conduct against a child in the first degree and endangering the welfare of a child, and a new trial ordered as to those counts, and, as so modified, affirmed.

Defendant was indicted for one count of course of sexual conduct against a child in the first degree in connection with various acts that he allegedly committed against his daughter prior to her thirteenth birthday; multiple counts of rape and incest for actions that purportedly occurred after his daughter became 13 years of age; two counts of endangering the welfare of a child; and 20 counts of criminal contempt for violations of an order of protection issued to the child and her mother. During the investigation, the victim's mother turned over to police the underwear that her daughter had worn on the day of the

alleged final incident, along with a bed sheet and a towel that her daughter claimed defendant ejaculated on (which the child described as defendant's usual behavior after he performed sexual acts with her). Analysis of the underwear revealed the presence of male DNA that did not belong to defendant. A copy of the report detailing the testing of the underwear was provided to defense counsel before trial. For some unexplained reason, the towel was not tested for genetic material.

Defendant's trial strategy focused on the lack of DNA evidence implicating him. Near the end of the People's direct case, defense counsel inquired of the prosecution why the towel had not been tested. This lead to the People's discovery that the towel had not been examined for genetic material, so they arranged for testing. When the People advised the court of this development, defense counsel objected to the introduction of any evidence derived from the towel, arguing that defendant's right to a fair trial would be undermined since the centerpiece of his defense was the absence of any scientific evidence corroborating the child's accusations.

After defendant's direct testimony and cross-examination, the People disclosed that the towel had been analyzed and was found to contain defendant's semen and the DNA of a female, but not that of defendant's daughter. Defense counsel reiterated that the evidence should be precluded or a mistrial ordered because the proffered scientific proof had not been available during the formulation of defendant's defense and it was too late for the defense to shift its emphasis. The trial court ruled that the People could introduce the DNA results and defendant could retake the stand, if he wished. The jury ultimately convicted defendant of first-degree course of sexual conduct against a child, endangering the welfare of a child and criminal contempt. The Appellate Division affirmed (82 AD3d 463 [1st Dept 2011]) and a Judge of this Court granted leave to appeal (17 NY3d 807 [2011]).

On these facts, the introduction of the scientific evidence pertaining to the genetic testing of the semen on the towel violated defendant's right to a fair trial. By the time the People discovered the testing oversight, defendant's contention that there was no DNA evidence to corroborate the charges had been placed before the jury, defendant had already testified and the trial was too far along for defense counsel to present a new defense theory. The evidence also corroborated a particular aspect of the daughter's testimony—that defendant commonly

ejaculated on a towel after intercourse—and her awareness of that fact indicated that she either had been exposed to or subjected to her father's sexual proclivities. The trial court therefore should have precluded the submission of this evidence or declared a mistrial (*see generally People v Goins*, 73 NY2d 989, 991 [1989]). But the error was harmless as to the criminal contempt charges because defendant admitted his guilt regarding those crimes. Consequently, defendant is entitled to a new trial on the charges of first-degree course of sexual conduct against a child and endangering the welfare of a child.

SMITH, J. (dissenting). I agree with defendant that the belated testing of the towel was a violation of CPL 240.20 (1) (c), which requires the People to make available upon a defendant's demand "[a]ny written report . . . concerning a . . . scientific test or experiment." The statute does not require the People to test anything—only to make available such tests as they have—but when, as here, the People delay the testing until well after the trial has begun, the effect is to defeat the purpose of the statute. If the People had done this deliberately, I might agree with the majority that the trial court should have precluded the results of the test, or ordered a mistrial.

But it is undisputed that the People were guilty of no more than an innocent mistake. Under these circumstances, the trial court did not abuse the discretion given to it by CPL 240.70 (1), which says that, where a party has failed to comply with a discovery obligation, the court may, among other things, "grant a continuance, issue a protective order, prohibit the introduction of certain evidence or the calling of certain witnesses or take any other appropriate action." When it became known that the towel had not been tested, the court asked whether defendant "would like to delay the proceedings and see what the evidence is"; and after deciding to admit the test results, the court invited defendant, who had already testified, "to retake the stand to develop any issues concerning the towel." Defendant declined both offers. I do not think fairness required the trial judge to do more—to choose between excluding relevant evidence and aborting the trial.

The towel was never a major part of the case. It was barely mentioned in the People's opening; was not mentioned at all in defendant's; and was the subject of only a few questions during the cross-examination of the complainant. And the belatedly obtained test results were not of much significance, because the complainant's DNA was not found on the towel. Indeed, as the

Appellate Division pointed out, the evidence that was obtained—the towel contained defendant's semen, mixed with other female DNA (presumably his wife's)—cut both ways. Both sides made use of it, without clear advantage to either, in closing argument. The People argued that, as the majority here suggests, the evidence confirmed the complainant's familiarity with "her father's sexual proclivities" (majority mem at 890); but defendant argued that the absence of the complainant's DNA proved the complainant lied when she claimed to have had sex with defendant shortly before the towel was turned over to the police.

Other evidence played a much larger role at the trial. The complainant's testimony was strongly corroborated by defendant's own statements. After his arrest, he wrote to his wife: "It is nobody's business what a man and his wife and family do in regards to each other if it's agreed upon jointly." He wrote to his daughter: "I never forced you . . . I never tricked you." In another letter to his wife, he begged her to read Genesis 19:31-38, recounting incest between Lot and his daughters. "This," defendant said, "is in the word of God!" The letters are virtually a confession. Any prejudice to defendant from the admission of the test results was insignificant by comparison.

Defendant was convicted after a fair trial. There is no good reason to try this case again.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, PIGOTT and JONES concur in memorandum; Judge SMITH dissents in an opinion.

Order modified, etc.