[979 NE2d 1135, 955 NYS2d 809]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT C. HALTER, Appellant.

Argued September 13, 2012; decided October 23, 2012

**APPEARANCES OF COUNSEL**

*Timothy P. Donaher, Public Defender*, Rochester (*Timothy S. Davis* of counsel), for appellant.

*Sandra Doorley, District Attorney*, Rochester (*Geoffrey Kaeuper* of counsel), for respondent.

## OPINION OF THE COURT

MEMORANDUM.

The order of the Appellate Division should be affirmed.

Defendant and his ex-wife are the parents of two daughters. After their divorce, the mother and daughters moved out of state but returned to New York several years later. This allowed defendant to visit his daughters (8 and 13 years of age) on weekends, but his relationship with his older daughter was fraught with difficulties. He constantly argued with her about what he considered her unacceptable behavior and threatened to send her to a "brat camp" if she continued to disregard his admonitions. Their contentious relationship lead to an incident in July 2006, when defendant sought police assistance to locate her since she had not returned to her mother's home the night before. After the police picked her up at the home of a 16-year-old boy, she and defendant had a heated telephone conversation. When the phone call ended, she informed her mother that her father had sexually abused her. The younger daughter later made a similar revelation, leading to defendant's arrest.

At defendant's bench trial, both daughters described their incidents of sexual abuse in detail. On cross-examination, the older daughter admitted that she often argued with her father about boys, her behavior and her attire. During defendant's testimony, he corroborated the friction between himself and his daughter and confirmed that he often discussed sending her to "the Villa," a special school, if she did not change her ways.

Defendant was convicted as charged of sexual abuse in the first degree, rape in the second degree, criminal sexual act in the second degree and endangering the welfare of a child. The Appellate Division affirmed (81 AD3d 1446 [4th Dept 2011]), and a Judge of this Court granted defendant leave to appeal (17 NY3d 796 [2011]).

On appeal, defendant claims that he was deprived of a fair trial because several of the trial court's evidentiary rulings prevented him from adequately establishing his older daughter's motivation to fabricate the charges. In particular, he asserts that the trial judge erred in precluding (1) cross-examination of the older daughter regarding the purportedly sexual nature of her relationship with the 16-year-old boy at whose home she was found; (2) cross-examination about her sexually provocative

postings and photos from her MySpace account; and (3) evidence of her tendency to wear what defendant considered to be inappropriate clothing for her age. Defendant claims that this evidence was essential to explaining the increasing discord between himself and his daughter and that its exclusion did not allow him to present a complete explanation of his defense. We disagree.

■ First, the court did not err in precluding evidence regarding the purportedly sexual nature of the daughter's relationship with an older teenage boy. That evidence fell squarely within the ambit of the Rape Shield Law, which generally prohibits "[e]vidence of a victim's sexual conduct" in a prosecution for a sex offense under Penal Law article 130 (CPL 60.42) because such evidence "rarely elicits testimony relevant to the issues of the victim's consent on credibility, but serves only to harass the alleged victim and confuse the jurors" (*People v Scott*, 16 NY3d 589, 594 [2011] [internal quotation marks and citation omitted]).* The court did not abuse its discretion in disallowing this line of inquiry under CPL 60.42 (5), which vests the trial court with discretion to consider the admission of such evidence "in the interests of justice." Although defendant claims that this evidence would have demonstrated that his daughter had a desire to preserve her relationship with the young man, defendant did not attempt to elicit the general nature of the relationship between the two teenagers, instead focusing solely on alleged sexual behavior (*compare People v Halbert*, 80 NY2d 865, 866 [1992] [where "the trial court allowed evidence of a relationship between the minor complainant and her male friend to be presented to the jury, the court did not err in its related discretionary evidentiary ruling precluding cross-examination of the complainant with respect to the sexual aspect of that relationship"]). In any event, the trial court did permit evidence regarding the daughter's failure to return home that night; that she was found by police at the teenage boy's house the next day; that she was in his bedroom with him; and that she was quite angry at defendant for sending the police after her.

■ Contrary to the dissent's suggestion, the trial court complied with the two-part Rape Shield Law procedure outlined in *People v Williams* (81 NY2d 303 [1993]). First, the court allowed defendant to describe without restriction his proposed

---

* The purportedly sexual relationship between the daughter and the 16-year-old boy was the only evidence at issue during the People's pretrial motion in limine premised on the Rape Shield Law.

line of inquiry as to whether a sexual relationship existed between the older daughter and the 16-year-old boy, and its asserted relevance to the defense—to show that the older daughter's motive to fabricate arose from her desire to continue her relationship with the boy without her father's interference, or to protect the boy from a statutory rape charge. Second, after stating that it "understood [defendant's] argument," the court declined the admission of the proposed evidence, explaining that defendant could "certainly ask her about running away from home as a motive, et cetera," but that the "sex part" would be excluded because of its propensity to harass the 13 year old. Although the dissent would apparently require a fuller explication, we found a similarly concise explanation sufficient in *Williams*, commenting that

> "[t]he court's statement of its findings, though brief and general, was also adequate. The court might better have commented on the specific proffer and explained why the 'interest of justice' exception was inapplicable under the circumstances of the case, but its statement adequately put defendants on notice of its reasoning and created a record for appeal. Any deficiencies in the procedure did not rise to the level of reversible error" (*id.* at 314).

So too here.

 Next, the trial court did not abuse its discretion in precluding defendant from cross-examining the older daughter about certain provocative comments and suggestive photos on her MySpace account. Trial judges have "discretion to determine the scope of the cross-examination of a witness" (*People v Corby*, 6 NY3d 231, 234 [2005]) and are entitled to weigh the probative value of such evidence against the possibility of confusion, unfair prejudice or cumulativeness (*see People v Hayes*, 17 NY3d 46, 53 [2011]). Here, the trial court gave defendant some leeway in portraying the nature of the material on his daughter's MySpace account and the conflict that arose between them over the postings. During cross-examination, the daughter admitted that defendant was "very angry" about what he found on her account and told her to shut it down, which she refused to do. She also testified that she did not appreciate her "father yelling at [her] about [her] MySpace page." Defendant himself described the content on the MySpace account as "disgusting" in explaining why he forbade his daughter from using the computer at his house. Although the trial court could have permitted further

inquiry, it was not an abuse of discretion to preclude additional cross-examination regarding the precise images or content appearing on the daughter's MySpace page. Based on the evidence presented, it was obvious that the inappropriate MySpace postings caused considerable friction between defendant and his daughter and that she resented his parental intrusion.

■ We also perceive no abuse of discretion in the trial court's exclusion of evidence regarding the specific clothing the older daughter favored. In determining issues of relevancy of evidence, trial courts possess latitude to admit or preclude evidence based on their analysis of its probative value against the danger that it will confuse the main issues, cause unfair prejudice to the other side or be cumulative (*see People v Petty*, 7 NY3d 277, 286 [2006]). As with the MySpace evidence, the court did permit testimony regarding the controversy over the daughter's attire and defendant's negative reaction to her clothing choices. For example, defense counsel asked the daughter whether defendant "criticized the way [she] dressed" and would "criticize that [she] showed too much." She answered both questions in the affirmative. Defendant was able to demonstrate that the daughter's manner of dress was another source of strain on the parent-child relationship that contributed to the daughter's motivation to escape his control by fabricating charges of sexual abuse. That the court later discontinued further questioning of defendant regarding his "observations of the way that [she] was dressing" does not warrant reversal because the precise types of clothing that his daughter wore were unnecessary to further the motive defense.

In sum, the trial judge gave defendant sufficient latitude to develop the theory that his older daughter had substantial reasons to fabricate—either to put an end to defendant's parental interference or to avoid being sent to an institution for troubled youths. The proof showed that defendant contacted the police to find her; constantly argued with her about her relationships with boys; objected to her staying out late at night; criticized her clothing; ordered her to discontinue her MySpace page; believed her to be disrespectful toward authority figures; and warned her "every other weekend or so" that her rebellious behavior would result in her placement in the Villa. Furthermore, the daughter acknowledged that she was upset with defendant for calling the police; did not like him telling her how to dress or whom she could associate with; was tired of his "lectures"; and believed he was serious about his threat to

send her to a special program. Defendant was therefore able to present evidence reflecting his parental concern over his daughter's inappropriate and risky behavior, which he claimed provoked his daughter's motivation to lie about his conduct. As such, there was no abuse of discretion in the trial court's exclusion of the challenged evidence.

PIGOTT, J. (dissenting). Section 60.42 of the Criminal Procedure Law, commonly known as the Rape Shield Law, provides that, generally, "[e]vidence of a victim's sexual conduct shall not be admissible" in a sex offense prosecution. However it is not an inelastic rule of evidence. It contains several important statutory exceptions. In addition to four very specific situations in which such evidence may be admissible (CPL 60.42 [1]-[4]), the statute provides that a trial court may determine, *in its discretion*, to admit evidence of a victim's sexual conduct if it is "relevant and admissible in the interests of justice" (CPL 60.42 [5]). It may do so "after an offer of proof by the accused outside the hearing of the jury, or such hearing as the court may require, and a statement by the court of its findings of fact essential to its determination" (*id.*). Under this provision, "evidence of a complainant's sexual conduct may be admissible if it is relevant to a defense" (*People v Scott*, 16 NY3d 589, 594 [2011]).

In *People v Williams* (81 NY2d 303 [1993]), we observed that although

> "the statute by its terms requires an offer of proof only when a court decides to *grant* a defense motion . . . [it] is designed to protect the rights and interests of defendants as well as the interests of victims. The requirement of a factual statement is properly viewed as ensuring both due consideration of defense motions and an adequate record for appeal while at the same time assuring that the victim's interests are properly considered" (81 NY2d at 313).

We therefore held that defense counsel must be "given an opportunity to summarize the evidence [of prior sexual conduct] and explain its relevance without restriction by the court," and that the trial court must in its statement of findings "adequately put defendants on notice of its reasoning and create[ ] a record for appeal" (*Williams*, 81 NY2d at 314).

Here, County Court failed to give any but the most cursory explanation of its decision. Presented with the motion in limine, the trial court simply stated, "Not admissible. *That doesn't*

*really have to be a motion. It's not admissible except under certain limited circumstances* that I assume counsel knows about" (emphasis added). Pressed by defense counsel to admit evidence of the elder sister's sexual contact with a 16-year-old boy, the trial court responded as follows:

> "I don't buy it with respect to being outside the rape shield. I don't think you can ask her about her sexual contact with another person. You can certainly ask her about running away from home as a motive, et cetera, but not the sexual stuff. . . . I think running away from home would be of sufficient concern to her father. . . . Of course, you can cross-examine to that. It's motive to fabricate."

It appears that County Court was under the misconception that the Rape Shield Law contains only the specific enumerated exceptions of section 60.42 (1) through (4), and that it was powerless to admit any evidence of the elder sister's sexual conduct unless it matched one of these four exceptions. In other words, the trial court believed that it had no discretionary authority to allow in evidence of the elder sister's sexual conduct even if relevant to a defense. It thought that there "doesn't really have to be a motion" because it considered exclusion of evidence of sexual conduct to be automatic, and not require judicial discretion.

Moreover, County Court failed to explain its reasoning in such a way as to create a record for appeal. While this Court articulates a theory on which the trial court "gave defendant sufficient latitude to develop the theory that his older daughter had substantial reasons to fabricate" (majority mem at 1051), there is no evidence in the record of any attempt by the trial court to analyze the relevance of the sexual evidence that defense counsel sought to admit. For example, when defense counsel suggested to the trial court that it would be relevant to the defense to elicit whether the elder sister was actually having sex with an older boy—because that was pertinent to the elder sister's concern that the boy might be arrested for statutory rape if her father continued to intrude—the trial court refused to consider that argument, and simply responded, "No. Stay away from the sex part." It cannot be said that this reply put defendant on notice of the court's reasoning.

The Rape Shield Law has an important place in criminal proceedings. In particular, it "put[s] to rest the now-discredited rationale that a victim's past 'unchastity' is probative of present

*consent* and recognize[s] that such evidence is typically of little or no relevance and may seriously prejudice the prosecution of sex crimes" (*Williams*, 81 NY2d at 312 [emphasis added]; *see also Scott*, 16 NY3d at 594). Here, however, where consent was not at issue, since even the elder sister was below the age of consent, this primary policy reason underlying the Rape Shield Law does not apply in any obvious manner, and the principal concern is instead to prevent embarrassment to, or harassment of, the victim. I see no evidence in the record of the requisite careful weighing of the elder sister's privacy interests against the defendant's rights to confrontation and to present a defense. Rather, the trial court seems to have proceeded entirely on the basis that no evidence of the elder sister's sexual conduct could ever be admitted.

County Court committed reversible error in failing to comply with *Williams*. Moreover, that error was not harmless. The evidence of defendant's guilt was far from overwhelming. The proof was based entirely on the testimony of the two sisters, one of whom had a strong motive to fabricate a story of parental abuse. There was no forensic or other physical evidence tending to prove defendant's guilt. Had County Court understood its discretionary authority to allow in evidence of the elder sister's sexual conduct under CPL 60.42 (5), there is a significant probability that it would have admitted the evidence of the elder sister's sexual conduct that was material to her motive to fabricate—evidence that we must instead assume that it instructed itself to disregard—and reached a different verdict than it did. In assessing the probability of a different verdict, we must consider that the elder sister had previously accused another man—her mother's then-boyfriend—of beating her, an allegation that her mother told the court was not true.

SMITH, J. (dissenting). In several recent cases involving alleged sexual abuse of children, I expressed in dissenting opinions my view that the convictions should be upheld, in part because of strong evidence of the defendants' guilt (*see People v Rosario*, 17 NY3d 501, 515 [2011, Smith, J., dissenting]; *People v Fisher*, 18 NY3d 964, 967 [2012, Smith, J., dissenting]; *People v Kelley*, 19 NY3d 887, 890 [2012, Smith, J., dissenting]). In this case, I have the opposite problem. I believe that the majority is erroneously affirming a conviction in a case where the defendant may be innocent. I join Judge Pigott's dissent, and write separately to elaborate on his observation that "[t]he evidence of defendant's guilt was far from overwhelming" (dissenting op of Pigott, J. at 1054).

This case does not, as many cases involving sexual abuse within a family do, involve a long and intimate relationship, a careful grooming of the child victim, and a pact of secrecy between the victim and her abuser. The older complainant here made an accusation of abuse against a father she had not lived with for many years. She made the accusation, she admitted, as a way of thwarting defendant's threat to send her to a place referred to in the record as "brat camp" or "the Villa"—evidently an institution for adolescents with behavior problems.

The older complainant asserted, in substance, that on three occasions defendant attacked her sexually without warning. On two of the occasions, his alleged conduct in doing so seems to have been almost insanely risky: It took place in a room where several other people were asleep. The record shows that, as defendant well knew, the older complainant was not a meek or submissive child. What made him think she would not cry out, and awaken the others?

The older complainant's testimony contains another significant improbability: Defendant testified that he did indeed intend to send his daughter to "the Villa," and she testified that she "knew" he really would send her there. But what abuser in his right mind would send his victim to a place where he would lose access to her, where she would know she was safe from him, and where she would be encouraged to tell counselors about anything that was bothering her?

The older complainant was, the record makes clear, a seriously troubled girl—with troubles not, so far as the record shows, of defendant's making. She acknowledged that she had punched in the face a schoolmate who had insulted her, and that she had written a letter saying "that I hated my teachers and I was gonna burn down the school." She had twice run away from the home where she lived with her mother and stepfather, and had called Child Protective Services to complain about her stepfather, who, she said, had beaten her up and put a pillow over her face. The record provides no basis for judging whether her charges against her stepfather were true or false; either way, they are more evidence that her life was a turbulent one.

I acknowledge that one fact in the record—the accusation of defendant by his younger daughter, made soon after the older complainant accused him—adds significant strength to the People's case (though it would not be unprecedented for a young girl to imitate or join her older sister's bad behavior). More

fundamentally, of course I acknowledge that it is not our job to decide defendant's guilt or innocence. Doubts about the evidence of his guilt are relevant here only as they illuminate the ruling that the trial court made under the Rape Shield Law. I think that ruling was incorrect, for the reasons Judge Pigott explains; but I admit that, if it was a correct ruling, we must affirm the conviction, whether we think defendant innocent or guilty.

Nevertheless I am disturbed—more disturbed in this way than I have been by any case since *People v Calabria* (3 NY3d 80 [2004]). In *Calabria*, Judge Rosenblatt, who voted to uphold the defendant's conviction, remarked in a concurring opinion:

> "[T]his is a particularly disquieting case, one that calls for a new and fastidious layer of review. If on further investigation the District Attorney shares these concerns, he has the power and, I am confident, the motivation, to take whatever steps are appropriate to do justice" (*id.* at 84).

I make a like suggestion now to the Monroe County District Attorney.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ and JONES concur; Judge PIGOTT dissents and votes to reverse in an opinion in which Judge SMITH concurs; Judge SMITH in a separate dissenting opinion.

Order affirmed in a memorandum.