*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:   January 5, 2017                    105112
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                         Respondent,

        v                                      MEMORANDUM AND ORDER

SAMUEL SERRANO-GONZALEZ,
                         Appellant.
_____

Calendar Date:   November 21, 2016

Before:   McCarthy, J.P., Lynch, Rose, Clark and Aarons, JJ.

_____

        Michael P. Mansion, Latham, for appellant, and appellant
pro se.

        Karen Heggen, District Attorney, Ballston Spa (Kirstin T.
Foust of counsel), for respondent.

_____

McCarthy, J.P.

        Appeal from a judgment of the County Court of Saratoga
County (Scarano, J.), rendered May 17, 2012, upon a verdict
convicting defendant of the crimes of rape in the first degree
and sexual abuse in the first degree.

        Defendant was charged by indictment with one count of rape
in the first degree, one count of sexual abuse in the first
degree and one count of criminal obstruction of breathing or
blood circulation.  The charges stemmed from allegations that
defendant threatened and choked the victim while forcibly raping
her all before he continued to threaten her at knife point until
she escaped and ran to a nearby police station.  After a jury
trial, defendant was convicted of one count of rape in the first

degree and one count of sexual abuse in the first degree. County Court sentenced defendant, as a second felony offender, to concurrent prison terms of 20 years followed by 25 years of postrelease supervision for his conviction of rape in the first degree and seven years followed by 15 years of postrelease supervision for his conviction of sexual abuse in the first degree. Defendant now appeals, and we affirm.

County Court properly allowed the victim to testify regarding her knowledge of defendant's HIV status. Defendant contends that the value of the evidence referencing his HIV status was more prejudicial than probative and that he otherwise has a constitutionally protected privacy interest that was violated by the introduction of such evidence. Defendant's HIV status was directly at issue in regard to whether he and the victim engaged in consensual intercourse. The victim testified that she and defendant had previously had a consensual sexual relationship. Thereafter, defendant was diagnosed with HIV. The victim indicated that, as a result of defendant's diagnosis, she and defendant discussed their relationship and agreed that it would thereafter be "platonic." Thus, defendant's HIV status was highly probative evidence as necessary background information regarding the victim's choice to stop having sexual intercourse with defendant. Moreover, County Court instructed the jury that defendant's HIV status could not be considered as propensity or disposition evidence in relationship to the charged crimes. Considering the foregoing, County Court did not abuse its discretion in permitting the victim's testimony on the issue (see People v Pham, 118 AD3d 1159, 1161 [2014], lv denied 24 NY3d 1087 [2014]; People v Higgins, 12 AD3d 775, 778 [2004], lv denied 4 NY3d 764 [2005]).

Further, having failed to raise to County Court the contention that he had a constitutional privacy interest that rendered such evidence inadmissible, defendant did not preserve that contention for our review (see People v Nelson, 27 NY3d 361, 367-368 [2016], cert denied ___ US ___ [Oct. 3, 2016]). In any event, as the victim, rather than a state actor, provided the evidence at trial related to defendant's HIV status, defendant's constitutional privacy rights could not have been impinged upon (compare Doe v City of NY, 15 F 3d 264, 268 [2d Cir 1994]; see

generally People v Mendoza, 211 AD2d 493, 493 [1995]).

Next, County Court did not abuse its discretion in preventing defendant from introducing evidence on a collateral matter regarding the victim's statements in the aftermath of defendant's HIV diagnosis. Defendant contends that the court erred in denying his request to call one of his nurses to testify that, after the HIV diagnosis and approximately two weeks before the events leading to his convictions, the victim told the nurse that she planned to "stay together" with defendant. The victim's conversation with the nurse occurred well after the victim learned of defendant's HIV diagnosis. Thus, the victim was not under the stress of a startling event and, therefore, any statement that she made was not an excited utterance (see People v Hansen, 290 AD2d 47, 54 [2002], affd 99 NY2d 339 [2003]). Moreover, inasmuch as the subject statement does not address the victim's state of mind as to a future consensual sexual relationship with defendant, the court did not abuse its discretion in finding that the evidence was not admissible pursuant to the state of mind exception to the rule against hearsay (see generally People v Aska, 91 NY2d 979, 981 [1998]). Finally, as the victim was not seeking any diagnosis or treatment in having a discussion with defendant's nurse, the statement is not admissible as relevant medical treatment or diagnosis (see People v Thomas, 282 AD2d 827, 828 [2001], lv denied 96 NY2d 925 [2001]).

Moreover, the evidence was not admissible as impeachment evidence. "[A] party may not introduce extrinsic evidence on a collateral matter solely to impeach credibility" (People v Alvino, 71 NY2d 233, 247 [1987]). "The purpose of this rule is judicial economy, to prevent needless multiplication of issues in a case, and to insure that the jury is not confused with irrelevant evidence" (id. at 248). "However, that general rule is not applied where the issue to which the evidence relates is a material one, that is, one that the jury must decide" (People v Mink, 267 AD2d 501, 503 [1999] [citation omitted], lv denied, 94 NY2d 950 [2000]). Here, the victim testified to the fact that, after defendant was diagnosed with HIV, she planned to continue to live with him and did not intend to abandon him or cut off their relationship. Nonetheless, on cross-examination, the

victim denied having told the nurse that she intended to "stay together" with defendant. Defendant sought to introduce the nurse's testimony to show that the victim was "telling a lie." Assuming for the sake of argument that the phrase "stay together" could be construed as referring to a sexual relationship, defendant's impeachment efforts related to proof regarding the victim's mental state approximately two weeks before the events underlying the convictions. The jury did not need to determine the victim's mental state in the initial aftermath of defendant's diagnosis. Accordingly, County Court did not abuse its discretion in precluding defendant from attempting to impeach the victim as to that collateral issue (see People v Olivares, 34 AD3d 602, 602 [2006], lv denied 9 NY3d 879 [2007]; People v Richardson, 28 AD3d 1002, 1004 [2006], lv denied 7 NY3d 817 [2006]; People v Alexander, 16 AD3d 515, 515-516 [2005], lv denied 5 NY3d 758 [2005]). In any event, any error in failing to admit such evidence would be harmless. Defendant testified to his recollection of the victim's statements to the nurse, and the victim's testimony regarding the rape and abuse was otherwise corroborated by medical[1] and DNA evidence (see People v Maxam, 135 AD3d 1160, 1162 [2016], lv denied 27 NY3d 1135 [2016]).

In addition, County Court properly allowed for the redaction of portions of a DNA test of the victim's vulvar swab referring to DNA of an additional donor not linked to defendant and properly precluded defendant from calling a DNA expert to testify regarding the additional donor evidence. Defendant admitted, when arguing for the admission of the evidence, that he wanted to use it to examine the victim as to her sexual history with persons other than defendant. Introducing such evidence for that purpose "[falls] squarely within the ambit of the Rape Shield Law, which generally prohibits '[e]vidence of a victim's sexual conduct' in a prosecution for a sex offense under Penal Law article 130 (CPL 60.42)" (People v Halter, 19 NY3d 1046, 1049

---

[1] Despite defendant's testimony that he engaged in consensual unprotected sex with the victim, a nurse who examined the victim explained that the victim had red marks on her neck, bruising on her arms and a puncture wound on her thigh, all of which corroborated the victim's testimony.

[2012]).  Accordingly, County Court properly precluded that evidence (see People v Halter, 19 NY3d at 1049; People v Mitchell, 10 AD3d 554, 555 [2004], lv denied 3 NY3d 759 [2004]).

County Court properly granted the People's motion to redact references to the victim's past instances of self-inflicted and defendant-inflicted cutting in her medical records.  A victim's past psychiatric and medical history has been properly deemed inadmissible in instances where the records are not "probative of the victim's veracity or any tendency to falsely report sex crimes" (People v Murphy, 188 AD2d 742, 744 [1992], lv denied 81 NY2d 890 [1993]; see People v Graham, 117 AD2d 832, 834 [1986], lv denied 68 NY2d 770 [1986]).  Here, the victim's medical records contained notes indicating that defendant had previously cut her forearm and that she had also previously cut her own forearm.  There is no evidence within the medical records suggesting that these reports are false.  Accordingly, as the records themselves are not probative as to veracity or false reports of sex crimes, the references to cutting were properly redacted (see People v Murphy, 188 AD2d at 744; People v Graham, 117 AD2d at 834).

Next, County Court did not abuse its discretion in its Sandoval ruling.  County Court granted the People's motion to question defendant as to multiple misdemeanor and felony convictions, many of which related to the possession of a controlled substance.  The court precluded the People from mentioning the sentences or the underlying facts of the convictions so long as defendant admitted to them, and the court also gave limiting instructions that the convictions could not be used as proof of the commission of the crimes at issue. Considering the balance that the court struck as to the scope of the inquiry and that the convictions implicated defendant's willingness to place his own interests above that of society's, the Sandoval ruling was proper (see People v Gangar, 79 AD3d 1262, 1263-1264 [2010], lv denied 16 NY3d 831 [2011]; People v Peele, 73 AD3d 1219, 1220 [2010], lvs denied 15 NY3d 893, 894 [2010]).

Finally, defendant's sentence does not establish that he was punished for exercising his trial right and it is also not

harsh or excessive.  "The fact that the sentence imposed is longer than one rejected during plea negotiations does not establish that defendant was punished for exercising his constitutional right to trial" (People v Foulkes, 117 AD3d 1176, 1177 [2014] [citations omitted], lv denied 24 NY3d 1084 [2014]; see People v Sapienza, 91 AD3d 988, 989 [2012]).  Further, given the nature of the crime, defendant's criminal history and the fact that the court gave less than the maximum allowable sentence, we find no abuse of discretion or extraordinary circumstances that would warrant a reduction in defendant's sentence (see People v Peart, 141 AD3d 939, 942 [2016], lv denied ___ NY3d ___ [Nov. 4, 2016]; People v Thiel, 134 AD3d 1237, 1241 [2015], lv denied 27 NY3d 1156 [2016]).  Defendant's remaining contentions have been considered and are without merit.

Lynch, Rose, Clark and Aarons, JJ., concur.

ORDERED that the judgment is affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court