People v Johnson (2023 NY Slip Op 04064)

People v Johnson

2023 NY Slip Op 04064

Decided on July 28, 2023

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 28, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., PERADOTTO, LINDLEY, OGDEN, AND GREENWOOD, JJ.

551 KA 22-00334

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
MARK JOHNSON, DEFENDANT-APPELLANT. 

ROBERT M. GRAFF, LOCKPORT, FOR DEFENDANT-APPELLANT.
BRIAN D. SEAMAN, DISTRICT ATTORNEY, LOCKPORT (THOMAS H. BRANDT OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Niagara County Court (John James Ottaviano, J.), rendered January 21, 2022. The judgment convicted defendant upon a jury verdict of predatory sexual assault against a child, rape in the second degree, criminal sexual act in the second degree and endangering the welfare of a child. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of, inter alia, predatory sexual assault against a child (Penal Law § 130.96), rape in the second degree (§ 130.30 [1]), and criminal sexual act in the second degree (§ 130.45 [1]) stemming from his conduct toward a child living in his home. We reject defendant's contention that County Court improperly applied the Rape Shield Law to preclude him from cross-examining the victim regarding her association with boys outside the home. Defendant's offer of proof pursuant to CPL 60.42 (5) showed that the proposed cross-examination stemmed from a statement made by a sister of the victim regarding the victim's sexual history, which evidence would be prohibited by the Rape Shield Law (see People v Halter, 19 NY3d 1046, 1049 [2012]). The court did not abuse its discretion in refusing to apply the exception set forth in subdivision (5) of CPL 60.42 (see Halter, 19 NY3d at 1049; People v Hill, 184 AD3d 1086, 1087 [4th Dept 2020], lv denied 35 NY3d 1094 [2020]). Defendant contends that the court's ruling prohibited him from exploring the victim's motive to lie based on her reaction to defendant's house rules about not dating boys. We reject that contention inasmuch as defendant elicited on cross-examination that the victim was not allowed to have any friends come to her house and was not allowed to go to any friends' houses or parties, which rules she did not like, and defense counsel argued in summation that the victim fabricated the charges against defendant because of his strict house rules. We therefore conclude that defendant had "sufficient latitude to develop the theory that [the victim] had substantial reasons to fabricate" (Halter, 19 NY3d at 1051; see generally People v Vo, 166 AD3d 1587, 1588 [4th Dept 2018]).
We reject defendant's contention that the court abused its discretion in admitting in evidence the testimony of the People's expert on child sexual abuse accommodation syndrome (CSAAS). It is well settled that expert testimony concerning CSAAS "is admissible to explain the behavior of child sex abuse victims as long as it is general in nature and does not constitute an opinion that a particular alleged victim is credible or that the charged crimes in fact occurred" (People v Drake, 138 AD3d 1396, 1398 [4th Dept 2016], lv denied 28 NY3d 929 [2016]; see People v Diaz, 20 NY3d 569, 575-576 [2013]; People v Williams, 20 NY3d 579, 583-584 [2013]). Here, the People's expert, who had never interviewed anyone involved in the case and was not aware of the facts of the case, gave testimony in general terms and did not exceed permissible bounds (see Diaz, 20 NY3d at 575-576; People v Spicola, 16 NY3d 441, 458, 466 [2011], cert denied 565 US 942 [2011]; People v Young, 206 AD3d 1631, 1632 [4th Dept 2022]).
Defendant next contends that the court erred in admitting in evidence three photographs showing parts of his residence that were dirty and in need of repair, contending that the condition of his residence was a collateral issue intended only to impeach his credibility. We reject that contention inasmuch as the conditions depicted in the photographs were relevant "to some issue in the case other than credibility" (People v Schwartzman, 24 NY2d 241, 245 [1969], cert denied 396 US 846 [1969]). The victim and one of her sisters testified that defendant and his wife kept the refrigerator locked and secured other food and snacks in their bedroom and that sometimes there was not enough heat or hot water in the home. Two photographs that depicted defendant's bedroom in disarray showed two refrigerators, a microwave, bottled water, and snacks, and another photograph showed the basement with a heater in apparent disrepair. The photographs were relevant to establish defendant's control over the victim by controlling her food intake and comforts and to help explain her delayed disclosure (see generally People v Ortiz, 135 AD3d 649, 650 [1st Dept 2016], lv denied 27 NY3d 1004 [2016]). We perceive no abuse of discretion by the court in admitting the photographs in evidence (see People v Carrino, 164 AD3d 695, 696 [2d Dept 2018], lv denied 32 NY3d 1109 [2018]; see also People v Wright, 107 AD3d 1398, 1400 [4th Dept 2013], lv denied 23 NY3d 1026 [2014]).
Defendant's contention that the conviction of predatory sexual assault against a child is not based on legally sufficient evidence is preserved only in part because, in moving for a trial order of dismissal, defendant raised only some of the specific grounds raised on appeal (see People v Gray, 86 NY2d 10, 19 [1995]; People v Parilla, 214 AD3d 1399, 1402 [4th Dept 2023]). In any event, viewing the evidence in the light most favorable to the People (see People v Contes, 60 NY2d 620, 621 [1983]), we conclude that the evidence provides a "valid line of reasoning and permissible inferences" that could lead a rational person to conclude, beyond a reasonable doubt (People v Delamota, 18 NY3d 107, 113 [2011]), that defendant committed the offense of predatory sexual assault against a child. Any inconsistencies presented by the victim's testimony regarding the dates when the abuse occurred merely presented credibility issues for the jury (see People v Furlong, 4 AD3d 839, 841 [4th Dept 2004], lv denied 2 NY3d 739 [2004]). We further conclude that, viewing the evidence in light of the elements of all the crimes as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), the verdict is not against the weight of the evidence (see generally People v Bleakley, 69 NY2d 490, 495 [1987]).
Defendant contends that the People's statement of readiness was illusory, because the People had not disclosed the contents of the personnel record for each law enforcement official that the People intended to call as a trial witness, and the court should have granted his motion seeking to vacate the statement of readiness. We reject that contention. CPL article 245 requires the People to automatically disclose to the defendant "all items and information that relate to the subject matter of the case" that are in the People's "possession, custody or control" (CPL 245.20 [1]; see People v Bonifacio, 179 AD3d 977, 977-978 [2d Dept 2020]). That includes evidence that tends to "impeach the credibility of a testifying prosecution witness" (CPL 245.20 [1] [k] [iv]). The court properly denied the motion inasmuch as defendant was not automatically entitled to the entirety of a police officer's personnel file as impeaching material under CPL 245.20 (1) (k) (iv), but rather only to the extent that the information "relate[d] to the subject matter of the case" (CPL 245.20 [1]). We conclude that there were no such personnel records here that were subject to automatic discovery (see People v Lewis, 78 Misc 3d 877, 879-880 [Sup Ct, Kings County 2023]).
Contrary to defendant's contention, the court did not abuse its discretion in denying his CPL 330.30 (3) motion to set aside the verdict based on newly discovered evidence (see generally People v Pugh, 236 AD2d 810, 810-811 [4th Dept 1997], lv denied 89 NY2d 1099 [1997]). The evidence consisted of the posttrial statements of one of the victim's sisters recanting part of her trial testimony regarding seeing the victim and defendant standing close together in the kitchen on one occasion and stating that she had been pressured by the prosecutor to say that. " 'There is no form of proof so unreliable as recanting testimony' . . . , and such testimony is 'insufficient alone to warrant vacating a judgment of conviction' " (People v Pringle, 155 AD3d 1660, 1660 [4th Dept 2017], lv denied 31 NY3d 986 [2018]). Here, the court conducted a hearing during which the witness testified that her posttrial statements were voluntarily made, but admitted that she had first made the statement about witnessing defendant and the victim standing close to one another in the kitchen to an interviewer at a child advocacy center four months before meeting the prosecutor. We agree with the court that the recantation evidence was not credible, and in any event it was not "of such character as to create a [*2]probability that had such evidence been received at the trial the verdict would have been more favorable to defendant" (CPL 330.30 [3]; see People v Colbert, 289 AD2d 976, 976 [4th Dept 2001], lv denied 97 NY2d 752 [2002]; People v Dukes, 106 AD2d 906, 906-907 [4th Dept 1984]; see generally People v McCullough, 275 AD2d 1018, 1019 [4th Dept 2000], lv denied 95 NY2d 936 [2000]).
The sentence is not unduly harsh or severe. We have considered defendant's remaining contentions and conclude that none warrants reversal or modification of the judgment.
Entered: July 28, 2023
Ann Dillon Flynn
Clerk of the Court