People v Graham (2021 NY Slip Op 06699)





People v Graham


2021 NY Slip Op 06699


Decided on December 1, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 1, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
SYLVIA O. HINDS-RADIX
LINDA CHRISTOPHER
JOSEPH A. ZAYAS, JJ.


2019-06050
 (Ind. No. 18-00426)

[*1]The People of the State of New York, respondent,
v
Cally Graham, appellant.


Alex Smith, Middletown, NY, for appellant, and appellant pro se.
David M. Hoovler, District Attorney, Goshen, NY (Robert H. Middlemiss and Andrew R. Kass of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the County Court, Orange County (Craig Stephen Brown, J.), rendered April 30, 2019, convicting him of rape in the first degree and criminal sexual act in the first degree, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is reversed, on the law, the indictment is dismissed, and the matter is remitted to the County Court, Orange County, for further proceedings consistent with CPL 160.50.
The complainant testified at trial that in November 2017, when she was 15 years old, she ran away from a residential juvenile facility and traveled to Newburgh. There, she met a woman named Franiqua Patterson (hereinafter Franiqua). The complainant testified that she needed to make money; otherwise, she would have "to go back to placement." Franiqua encouraged the complainant to engage in prostitution and, to this end, set up a profile for her on the Backpage website. Soon thereafter, Franiqua began arranging "dates" that would occur at the apartment where the complainant was staying with Franiqua, as well as at hotels in the area. It was not unusual for the complainant to have as many as 20 such "dates" in a single day; sometimes, she would have even more. Although the complainant and Franiqua agreed initially to share equally in the money the complainant made from these prostitution activities, ultimately, Franiqua kept all of it.
The complainant further testified that at some point—she could not specify when—Franiqua began behaving abusively towards her; she would curse at her, "[c]all [her] names," and hit her. On one occasion, Franiqua "busted [the complainant's] lip." Some of these disputes concerned money; others occurred because Franiqua "didn't like the things [the complainant] did."
The complainant testified that during the early morning hours of December 12, 2017, she went to an apartment where Franiqua's sister, Franeisha Patterson (hereinafter Franeisha), lived. Franeisha, Franiqua, Franiqua's boyfriend, Daniel Wapples, and Franeisha's boyfriend, the defendant, were in the living room. The complainant had never spoken with the defendant before.
Franeisha suggested to the complainant that she have sex with the defendant. At first, [*2]the complainant thought Franeisha was joking and "[l]aughed it off." Franeisha, however, repeated the suggestion several more times. Franiqua then "joined in," telling the complainant that she should also have sex with Wapples. Franiqua kept "pushing it." All of this made the complainant "[u]ncomfortable," and she told "[e]veryone" she did not want to do what was being proposed. Franiqua, however, continued pressuring the complainant, and, eventually, she acquiesced, removed her clothes, and began having sex with both men—sexual intercourse with Wapples, and oral sex with the defendant. Franiqua recorded part of what occurred on her phone. While this was happening, the complainant continued to feel uncomfortable.
When she testified at the defendant's trial, the complainant was asked if she believed she had a choice whether to have sex with the two men. In response, she said she did not think she did because "they were just pushing it" and there was "nothing [she] could do." The complainant acknowledged, however, that no one had threatened to hurt her and no one did, in fact, hurt her. She acknowledged, as well, that part of what made her uncomfortable was "[t]he whole situation," including the number of people that were present.
The defendant, Wapples, Franeisha, and Franiqua were charged, both as principals and under an acting-in-concert theory, with rape in the first degree, criminal sexual act in the first degree, use of a child in a sexual performance, and use of a child in a sexual performance as a sexually motivated felony. The rape in the first degree and criminal sexual act in the first degree charges were predicated on a forcible compulsion theory. In addition, Franiqua was charged—alone —with a number of sex trafficking and promoting prostitution offenses.
The defendant was tried jointly with Franeisha. He was convicted of rape in the first degree and criminal sexual act in the first degree. He was acquitted of use of a child in a sexual performance and, as a result of that acquittal, the jury did not consider the sexually motivated felony count. The defendant appeals, arguing, among other things, that there was legally insufficient evidence of forcible compulsion. We agree.
A court reviewing legal sufficiency of the trial evidence must determine "whether any valid line of reasoning and permissible inferences could lead a rational person to the conclusion reached by the fact finder on the basis of the evidence at trial, viewed in the light most favorable to the People" (People v Williams, 84 NY2d 925, 926).
Rape in the first degree, in violation of Penal Law § 130.35(1), and criminal sexual act in the first degree, in violation of Penal Law § 130.50(1), both require a finding of forcible compulsion. Forcible compulsion can be established in two ways: the use of physical force, or by "a threat, express or implied, which places a person in fear of immediate death or physical injury" (Penal Law § 130.00[8][b]) to herself or himself, or in fear that she or he will "immediately be kidnapped" (id.). Although the statutes defining sex offenses that include forcible compulsion as an element "are silent on the subject, intent is implicitly an element of these crimes. The intent required is the intent to perform the prohibited act—i.e., the intent to forcibly compel another to engage in intercourse or sodomy" (People v Williams, 81 NY2d 303, 316-317 [citation omitted]).
There was no evidence in this case that either the defendant or Wapples used actual physical force to compel the complainant to engage in sexual intercourse or oral sexual conduct; rather, their physical contact with the complainant was incidental to the sexual acts that they engaged in with her. The complainant also testified that she was not explicitly threatened by any of the perpetrators. And, notably, she never said that the defendant or Wapples played a role in the verbal cajoling by Franiqua and Franeisha that precipitated the sexual conduct. Thus, this case turned on whether there was sufficient evidence of an implied threat. There were, however, a number of problems with that theory generally, and specifically as it relates to this defendant. Viewing the evidence in the light most favorable to the People, we conclude that there was not sufficient evidence of an implied threat here.
To begin, although the complainant testified that, at some point during the several-month period that she stayed with Franiqua, Franiqua began to verbally and physically abuse her, she [*3]was unable to provide any sort of timeframe—no matter how approximate—for when this conduct began. Consequently, there was no evidence that Franiqua physically or verbally abused the complainant prior to December 12, 2017, which significantly undermined a finding a forcible compulsion by an implied threat on that date (cf. People v Peraza, 288 AD2d 689, 691 ["the victim's testimony, coupled with evidence of defendant's forcible compulsion upon her prior to the date in question, enabled a rational fact finder to conclude that she was subjected to such compulsion on this date as well"]).
In any event, even assuming that the complainant's testimony regarding her relationship with Franiqua, coupled with Franiqua's verbal pressuring of the complainant to have sex with the defendant and Wapples, established a "valid line of reasoning and permissible inferences" (People v Williams, 84 NY2d at 926) from which the jury reasonably could have concluded that Franiqua possessed the requisite intent, the same cannot be said for the defendant. As mentioned, the defendant was not charged with any sex trafficking or promoting prostitution offenses. Additionally, there was no evidence presented at trial that established that he was even aware of what was happening between Franiqua and the complainant. Thus, there was no basis for the jury to infer that the defendant and Franiqua shared a "community of purpose" (People v Guerrero, 150 AD3d 883, 884 [internal quotation marks omitted]) in terms of compelling the complainant, through implied threats, to engage in unwanted sexual acts.
Moreover, "[t]he determination of whether . . . an implied threat existed involves a subjective inquiry into what a victim feared a defendant might have done if he or she did not comply. The inquiry must consider all relevant factors includ[ing] . . . the nature of the defendant's relationship to the victim" (People v Porter, 82 AD3d 1412, 1413 [citations and internal quotation marks omitted]). But, here, since the complainant had never spoken with the defendant prior to the alleged sexual assault, there was no reason, even from her subjective point of view, to fear that he would physically harm her if she did not do what Franiqua and Franeisha were pressuring her to do (cf. People v Sehn, 295 AD2d 749, 751).
Further, the complainant's trial testimony regarding the incident itself, as well as the emotions she recounted experiencing during it, did not support a finding of forcible compulsion. The complainant said repeatedly during her testimony that she was uncomfortable throughout the incident, that she "fe[lt] like [she] had no control" over what was happening, and that there was "nothing [she] could do" to stop it. But she never connected those feelings to a fear of being physically injured, or some other similarly serious consequence (see People v O'Donnell, 195 AD3d 1430, 1432).
Nor, for that matter, did the complainant articulate what she "feared [any of the alleged perpetrators] would or might do if [she] did not comply with [Franiqua's and Franeisha's] demands" (People v Thompson, 72 NY2d 410, 415-416 [internal quotation marks omitted]; cf. People v Garrand, 189 AD3d 1763, 1767 [victim testified that she did not try to fight back, because she was afraid that the defendant would kill her]; People v Blackman, 90 AD3d 1304, 1305 [victim testified that she complied out of fear that if she did not, her assailant "'was going to hurt [her] more'"]; People v Porter, 82 AD3d at 1414 [victim testified that he was "'afraid [he] would get hit'" if he did not comply with perpetrators' demands]). The absence of such testimony might not be fatal to a finding of forcible compulsion under different circumstances. Here, however, as mentioned, there was no testimony that the complainant had been physically abused by Franiqua prior to this incident, and no evidence that the defendant was aware that Franiqua was acting abusively towards the complainant, regardless of when that conduct began. Beyond that, the complainant acknowledged that at least some of her discomfort was attributable to the "whole situation," including, understandably, that several people were present.
Contrary to the People's contention, the complainant's testimony that, at some point during the incident, she said she did not want to have sex with the defendant and Wapples, was insufficient, by itself, to establish forcible compulsion, although it may have supported a charge under a different theory of lack of consent (see Penal Law §§ 130.25[3]; 130.40[3]; People v Chapman, 54 AD3d 507, 509). Accordingly, we vacate the defendant's convictions of rape in the [*4]first degree and criminal sexual act in the first degree and dismiss the indictment.
In light of this determination, we need not reach the defendant's challenge to the County Court's jury instructions regarding rape in the first degree and criminal sexual act in the first degree. We nevertheless deem it appropriate to note that the court should not have instructed the jury, with respect to both offenses, that lack of consent can result not only from forcible compulsion, but also where there is "incapacity to consent," including, specifically, when a person is less than 17 years old.
This portion of the charge was misleading, inasmuch as it suggested to the jury that, in order to prove rape in the first degree and criminal sexual act in the first degree, the People could have relied on the fact that the complainant was younger than 17. But, instead, the People made things more difficult for themselves by pursuing those charges under a forcible compulsion theory. That suggestion was not only irrelevant given the nature of these charges, it was also legally incorrect. There is no first-degree rape or criminal sexual act charge that can be established simply by proving that the victim was younger than 17—the victim has to be younger than 13 and the defendant 18 or older, or younger than 11 regardless of the defendant's age (see Penal Law §§ 130.35[3], [4]; 130.50[3], [4]).
As this Court observed in a very similar scenario: the charge "should have made clear that conviction required a finding that the victim's lack of consent resulted from forcible compulsion. No reference should have been made to factors which could, in other cases, but not in the case at bar, result in lack of consent" (People v Mott, 77 AD2d 606, 607 [citation omitted]).
In light of our determination, we need not reach the defendant's remaining contentions.
DILLON, J.P., HINDS-RADIX, CHRISTOPHER and ZAYAS, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court