People v Patterson (2023 NY Slip Op 01103)

People v Patterson

2023 NY Slip Op 01103

Decided on March 1, 2023

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 1, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
PAUL WOOTEN
WILLIAM G. FORD
LILLIAN WAN, JJ.

2019-06053
 (Ind. No. 426/18)

[*1]The People of the State of New York, respondent,
v
Franeisha Patterson, appellant.

Gary E. Eisenberg, New City, NY, for appellant.
David M. Hoovler, District Attorney, Goshen, NY (Robert H. Middlemiss and Andrew R. Kass of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the County Court, Orange County (Craig Stephen Brown, J.), rendered April 30, 2019, convicting her of rape in the first degree, criminal sexual act in the first degree, and use of a child in a sexual performance, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is reversed, on the law, the indictment is dismissed, and the matter is remitted to the County Court, Orange County, for further proceedings consistent with CPL 160.50.
The complainant testified at trial that in November 2017, when she was 15 years old, she ran away from a residential juvenile facility and traveled to Newburgh. There, she met a woman named Franiqua Patterson (hereinafter Franiqua), who encouraged and enabled the complainant to engage in prostitution. The complainant testified that Franiqua became physically and verbally abusive toward her, and kept the money the complainant earned as a prostitute.
The complainant further testified that during the early morning hours of December 12, 2017, she went to an apartment where Franiqua's sister, the defendant, Franeisha Patterson, lived. Franiqua and her boyfriend, Daniel Wapples, along with the defendant and her boyfriend, Cally Graham, were in the living room of the apartment. The defendant told the complainant to have sex with Graham, which the complainant believed to be a joke. The defendant repeated the suggestion several more times, and Franiqua then "joined in," telling the complainant that she should also have sex with Wapples. Though the complainant was "[u]ncomfortable" and told "[e]veryone" that she did not want to do what was being asked of her, she acquiesced after additional pressure from Franiqua, and engaged in sexual acts with Graham and Wapples. Franiqua recorded a portion of the sexual acts on her phone.
At trial, when the complainant was asked if she believed she had a choice whether to have sex with the two men, she responded that she did not think she did, because "they were just pushing it" and there was "nothing [she] could really do." However, she also acknowledged that no one had threatened to hurt her, that she was not physically hurt, and that what had made her uncomfortable, in part, was "[t]he whole situation," including the number of people that were [*2]present.
The defendant, Wapples, Graham, and Franiqua were charged, both as principals and under an acting-in-concert theory, with rape in the first degree, criminal sexual act in the first degree, use of a child in a sexual performance, and use of a child in a sexual performance as a sexually motivated felony. The rape in the first degree and criminal sexual act in the first degree charges were predicated on a forcible compulsion theory. Franiqua was additionally charged with a number of sex trafficking and promoting prostitution offenses.
The defendant was tried jointly with Graham. The defendant was convicted of rape in the first degree, criminal sexual act in the first degree, and use of a child in a sexual performance. Graham was convicted of rape in the first degree and criminal sexual act in the first degree. However, on appeal to this Court, Graham's judgment of conviction was reversed, on the ground that there was legally insufficient evidence of forcible compulsion (see People v Graham, 200 AD3d 705, lv denied 38 NY3d 950). The defendant appeals, arguing, among other things, that there was legally insufficient evidence of forcible compulsion. We agree.
A court reviewing legal sufficiency of the trial evidence must determine "whether any valid line of reasoning and permissible inferences could lead a rational person to the conclusion reached by the fact finder on the basis of the evidence at trial, viewed in the light most favorable to the People" (People v Williams, 84 NY2d 925, 926). Rape in the first degree, in violation of Penal Law § 130.35(1), and criminal sexual act in the first degree, in violation of Penal Law § 130.50(1), both require a finding of forcible compulsion. Forcible compulsion can be established in two ways: the use of physical force, or by "a threat, express or implied, which places a person in fear of immediate death or physical injury" to herself or himself, or in fear that she or he will "immediately be kidnapped" (id. § 130.00[8][b]). Although the statutes defining sex offenses that include forcible compulsion as an element "are silent on the subject, intent is implicitly an element of these crimes. The intent required is the intent to perform the prohibited act—i.e., the intent to forcibly compel another to engage in intercourse or sodomy" (People v Williams, 81 NY2d 303, 316-317 [citation omitted]).
There was no evidence in this case that either Graham or Wapples used actual physical force to compel the complainant to engage in sexual intercourse or oral sexual conduct, and the complainant herself testified that she was not explicitly threatened by any of the perpetrators. To the extent that this case turned on whether there was sufficient evidence of an implied threat, we conclude, viewing the evidence in the light most favorable to the People, that there was not sufficient evidence of an implied threat here.
First, as the complainant did not provide a time frame of Franiqua's abusive behavior toward her, there was no evidence that Franiqua physically or verbally abused the complainant prior to December 12, 2017, which undermined a finding of forcible compulsion by an implied threat on that particular date (cf. People v Peraza, 288 AD2d 689, 691). Even assuming that the trial evidence established that Franiqua had possessed the requisite intent, the same cannot be said for the defendant, who was not charged with any sex trafficking or promoting prostitution offenses. Thus, there was no basis for the jury to infer that the defendant and Franiqua shared a "community of purpose" (People v Guerrero, 150 AD3d 883, 884 [internal quotation marks omitted]) in terms of compelling the complainant, through implied threats, to engage in unwanted sexual acts.
Moreover, "[t]he determination of whether . . . an implied threat existed involves a subjective inquiry into what a victim feared a defendant might have done if he or she did not comply. The inquiry must consider all relevant factors includ[ing] . . . the nature of the defendant's relationship to the victim" (People v Porter, 82 AD3d 1412, 1413 [citations and internal quotation marks omitted]). Here, however, there was no evidence that the complainant feared the defendant's reaction if she refused to comply with the subject sex acts. The complainant testified that the defendant had never physically harmed her, yelled at her, been angry with her, argued with her, took her money, or induced her to engage in prostitution, and was not paying her rent. The complainant attributed all of those actions to Franiqua. There was no evidence, even from the complainant's [*3]subjective point of view, that the complainant would have reason to fear that the defendant would physically harm her if she did not engage in the subject sexual acts, and the complainant's own trial testimony did not support a finding of forcible compulsion (see People v O'Donnell, 195 AD3d 1430, 1432). Accordingly, we must vacate the defendant's convictions of rape in the first degree and criminal sexual act in the first degree.
Additionally, we also vacate the defendant's conviction of use of a child in a sexual performance (Penal Law § 263.05). The complainant testified at trial that she had "lied" to Franiqua about her age, and that she had not ever told the defendant how old she really was. A trial witness who had rented rooms to Franiqua and the complainant testified that the complainant stated that she was in her early 20s. Even crediting the complainant's testimony that, following the subject sex acts, Franiqua had celebrated the complainant's birthday with her, there was no testimony that the defendant was present at this birthday celebration, no evidence that Franiqua communicated the complainant's true age to the defendant, and no other evidence that the defendant knew or suspected the complainant to have been younger than 17 years of age on the date when the subject sexual acts were filmed. Accordingly, the conviction of this count must also be vacated, as the defendant was able to establish, by a preponderance of the evidence, the affirmative defense that she had a good-faith reasonable belief that the person appearing in the performance was 17 years of age or older (see id. § 263.20[1]; cf. People v Bhattacharjee, 51 AD3d 684, 685).
In light of our determination, we need not reach the defendant's remaining contentions.
DILLON, J.P., WOOTEN, FORD and WAN, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court