OPINION OF THE COURT
Simons, J.
Defendants have been convicted of multiple counts of rape and sodomy in the first degree. The charges arose after a New Jersey woman alleged defendants forced her into a car outside a Manhattan dance club, took her to a Brooklyn apartment and there raped and sodomized her. At trial, defendants sought to introduce evidence purportedly showing that the woman had previously engaged in group sex. They contend that the trial court improperly applied the State’s "rape shield law” (CPL 60.42) to deny their application, thereby depriving them of their Federal constitutional rights to present evidence and confront the witnesses against them. They also assign error to the trial court’s refusal to instruct the jury expressly that acquittal was required if defendants held a mistaken belief that the complainant had consented to sexual relations. The Appellate Division affirmed the judgments and we now affirm its order in each case.
I.
The complainant, 17 years old, first encountered the three teenage defendants on a street in Manhattan shortly after midnight on August 17, 1989. She and defendant Williams *310 testified at trial and gave dramatically different accounts of what happened thereafter.
Complainant testified that she had come to New York City with a group of friends to go to a dance club and that around midnight, after she began to feel sick, she decided to wait for her companions in the car. A short time later, defendants struck up a conversation with her as she ran an errand to a nearby store and then asked her to accompany them to another club. She refused, but defendants continued to walk alongside her until they passed near defendant Richardson’s car. There, defendants surrounded her and, according to her trial testimony, she felt she had no choice but to go with them. She testified that Williams told her, "If you listen, you won’t get hurt.” Later, in the car, Williams intimated that his two companions were armed.
With Richardson driving and Williams seated next to the complainant in the back seat, defendants took her on a ride through Manhattan and Brooklyn, ultimately arriving at Williams’s Brooklyn apartment in the basement of his family’s home. The complainant concedes that the conversation in the car was friendly — an attempt, she testified, to "get on their good side”. The complainant testified that during the drive she repeatedly asked to be let out, but defendants refused. Once inside Williams’s apartment, she attempted to flee but found the door locked. She was then forced to engage in acts of sexual intercourse and sodomy by Williams and the others. Afterwards, they all left together, and in the car Williams forced her to perform oral sex on him. She was finally allowed to leave the vehicle near a mass transit station, where she immediately reported the incident to a police officer.
Williams was the only defendant to take the stand. He testified that all the incidents of sexual contact were consensual. According to his testimony, the complainant voluntarily accompanied them to Brooklyn, was affectionate toward him in the car, was never held against her will and had several opportunities to leave the car. He stated that she freely consented to sex with him in a bedroom at the apartment and then agreed to have sex with each of his friends. Later, when defendants let her out of the car near the transit station, he believed she intended to catch a train back to Manhattan to meet her friends. There was testimony from other witnesses which was not conclusive of the ultimate facts but tended to support some of the details in Williams’s account.
*311 The jury credited the testimony of the complainant and convicted defendants of multiple counts of rape in the first degree (Penal Law § 130.35) and sodomy in the first degree (Penal Law § 130.50).
II.
Defendants challenge the trial court’s application of the “rape shield law” (CPL 60.42) on both statutory and constitutional grounds. At trial, Fearon’s defense counsel asked the court to admit evidence showing that the complainant, who is white, had previously engaged in consensual group sex with black males. He asserted that the evidence would be relevant “with regard to her [complainant’s] motivation in terms of testifying” against defendants, who are black, and offered to submit the details of evidence to the court ex parte. After a colloquy with the defense and the prosecution, the court ruled the evidence was inadmissible without hearing it.
CPL 60.42 bars evidence of a complainant’s past sexual conduct unless one of five statutory exceptions applies. The first four allow evidence of a complainant’s prior sexual conduct in narrowly defined factual circumstances. The fifth, the only subdivision under consideration here, is a broader “interest of justice” provision vesting discretion in the trial court. Defendants’ principal argument on this appeal concerns not the substance of the court’s ruling but the procedure it followed prior to ruling that the evidence was not admissible under subdivision (5).
The subdivision allows evidence of prior sexual conduct to be admitted when such evidence
“is determined by the court after an offer of proof by the accused outside the hearing of the jury, or such hearing as the court may require, and a statement by the court of its findings of fact essential to its determination, to be relevant and admissible in the interests of justice” (CPL 60.42 [5]).
Defendants do not assert that a formal hearing must be held in every instance where the accused seeks to invoke the “interest of justice” clause, nor does the statute impose such a rigid requirement. Instead, defendants maintain that the procedure adopted here by the trial court denied them even the minimal statutory right to make “an offer of proof’. They allege further the proceedings were so limited that they violated due process and arbitrarily deprived them of their *312 Federal constitutional rights to present evidence and cross-examine witnesses in their own defense. Neither argument is persuasive.
New York’s rape shield law, like similar statutes in 47 other States,[1] was passed in response to concerns that testimony about the sexual past of the victims of sex crimes often serves solely to harass the victim and confuse the jurors (see, Mem of Assemblyman Fink, 1975 NY Legis Ann, at 47-48). The statutes put to rest the now-discredited rationale that a victim’s past "unchastity” is probative of present consent and recognized that such evidence is typically of little or no relevance and may seriously prejudice the prosecution of sex crimes (see, Ordover, Admissibility of Patterns of Similar Sexual Conduct: The Unlamented Death of Character for Chastity, 63 Cornell L Rev 90). At the same time, by providing exceptions to the general evidentiary prohibition of section 60.42, our Legislature acknowledged that there are instances where evidence of a complainant’s sexual history might be relevant and admissible.
The exceptions also recognize that any law circumscribing the ability of the accused to defend against criminal charges remains subject to limitation by constitutional guarantees of due process and the right to confront the prosecution’s witnesses (US Const 5th, 6th Amends; Pointer v Texas, 380 US 400; Washington v Texas, 388 US 14; see also, Tanford and Bocchino, Rape Victim Shield Laws and the Sixth Amendment, 128 U Pa L Rev 544). The Supreme Court, in affirming that a defendant’s "right to present his own witnesses to establish a defense * * * is a fundamental element of due process of law” (Washington v Texas, supra, at 19), has held in a variety of circumstances that certain State rules restricting evidence were unconstitutional either on their face or as applied. For example, in Washington v Texas (id.), a State law prohibiting a coparticipant in crime from testifying for the defense was declared unconstitutional; in Davis v Alaska (415 US 308), the Court found that the defendant’s rights were violated by a State law that prevented his attorney from impeaching a prosecution witness with the witness’s juvenile record (see also, Olden v Kentucky, 488 US 227; Alford v United States, 282 US 687); in Rock v Arkansas (483 US 44), a *313 rule that per se barred a defendant’s hypnotically refreshed testimony was declared unconstitutional. Similarly, in Chambers v Mississippi (410 US 284, 302) the Supreme Court found that a trial court’s "mechanistic” application of the hearsay rule to keep out testimony helpful to the accused violated the Constitution.
These decisions notwithstanding, it is settled that an accused’s right to cross-examine witnesses and present a defense is not absolute (id., at 295). Nor can the Sixth Amendment be read to "confer the right to present testimony free from the legitimate demands of the adversarial system” (United States v Nobles, 422 US 225, 241; accord, Michigan v Lucas, 500 US 145, —, 111 S Ct 1743, 1747-1748). Evidentiary restrictions are to be voided only if they are "arbitrary or disproportionate to the purposes they are designed to serve” (Rock v Arkansas, supra, at 56; Michigan v Lucas, 500 US, at —, 111 S Ct, at 1747, supra). A restriction is most likely to be found arbitrary when it is a per se rule, as in Rock, or when it is applied by a court without due consideration of the individualized circumstances and interests present in the matter before it, as in Chambers.[2] Insofar as rape shield laws are concerned, the Supreme Court has recognized that they express the States’ legitimate interest in giving rape victims "heightened protection against surprise, harassment, and unnecessary invasions of privacy” (see, Michigan v Lucas, 500 US, at —, 111 S Ct, at 1746, supra).
Considering defendants’ statutory claim first, CPL 60.42 (5) requires only that the trial court hear an "offer of proof’ and provide "a statement * * * of its findings of fact essential to its determination”. Though the statute by its terms requires an offer of proof only when a court decides to grant a defense motion and admit the evidence, it does not follow that the statute was intended solely for the benefit of victims. The section is designed to protect the rights and interests of defendants as well as the interests of victims. The requirement of a factual statement is properly viewed as ensuring both due consideration of defense motions and an adequate record for appeal while at the same time assuring that the victim’s interests are properly considered. Its procedural dic *314 tates therefore play a critical role whether an offer of proof is being denied or accepted.
Both procedural requirements of the statute were met by the trial court here. "Offer of proof’ is not a term of art but its generally accepted meaning, one also found in an unrelated section of the Criminal Procedure Law, is to summarize the substance or content of the evidence (see, CPL 290.10). Here, defense counsel was allowed to describe the proposed evidence and to state to the court why he believed it relevant —specifically, that evidence of prior group sex with blacks would be probative of the complainant’s motivation for testifying. In the People’s response to the request, an additional theory was suggested: a pattern of similar sexual behavior might be probative of consent. Defense counsel did not endorse the People’s theory but took the opportunity to explain his proffer further. After doing so, he asked the court to rule. The court rejected the offer of proof and gave an explanation for its ruling.
We are satisfied that the court met its obligation to hear the "offer of proof’. Defense counsel was twice given an opportunity to summarize the evidence and explain its relevance without restriction by the court. Indeed, after a brief recitation of the substance of the offer, counsel concluded his remarks and, on his own initiative, requested a ruling. The court’s statement of its findings, though brief and general, was also adequate. The court might better have commented on the specific proffer and explained why the "interest of justice” exception was inapplicable under the circumstances of the case, but its statement adequately put defendants on notice of its reasoning and created a record for appeal. Any deficiencies in the procedure did not rise to the level of reversible error.
Nor is reversal required on constitutional grounds. A viable claim of arbitrariness could be made out in several ways — for instance, if the court refused to hear the offer of proof or if the court declined to give a fuller hearing to the evidence once a colorable claim of relevance had been made. But the burden for making a threshold showing of relevance rested on the defense as the moving party (People v Westfall, 95 AD2d 581, 583; People v Mandel, 61 AD2d 563, revd on other grounds 48 NY2d 952, appeal dismissed 446 US 949; see, People v Hackett, 421 Mich 338, 349-350, 365 NW2d 120). There is nothing arbitrary about a trial court requiring a sensible proffer as part of a motion under CPL 60.42 and *315 refusing to proceed to a more elaborate airing of the evidence in the absence of one. To require that the accused make a threshold showing of relevance when CPL 60.42 is implicated is a minimal " 'legitimate demand[ ] of the adversarial system’ ” (see, Michigan v Lucas, 500 US 145, —, 111 S Ct 1743, 1748, supra).
Defense counsel here proposed that the evidence of the victim’s prior group sex with black males would show her motivation for testifying against defendants. Though given a full opportunity to do so, counsel made no effort to explain how prior sexual conduct with other males would be probative of the complainant’s motive to testify — a connection neither apparent nor logical on its face. Nor did counsel suggest that the evidence might be relevant to the question of consent, even after the prosecutor expressly raised that as a possible theory during the colloquy. In short, counsel gave no explanation of why the evidence was probative, and the Constitution does not compel a court to proceed to a fuller consideration of the evidence until the proponent demonstrates some basis for its admission. The constitutional standard is one of arbitrariness. Here, the court acted reasonably.
On this appeal defendants offer another theory of relevance: that the prohibited evidence was needed to counter a possible inference by the jury that no woman would voluntarily have sexual relations with three men she had met just hours before on the street. Though that theory was not expressly raised during the colloquy on the offer of proof or at any other time during trial, defendants point out that the prosecutor asked the jurors during summation to consider whether defendants’ account of the night’s events was "a little peculiar”. Defendants claim that at that point the court should have reconsidered its earlier ruling.
They rely on People v Mandel (61 AD2d 563, 568, revd on other grounds 48 NY2d 952, supra). In Mandel the Second Department held that a trial court, having initially barred evidence of prior sexual conduct should have reversed itself once the need for admission was apparent during cross-examination. The circumstances at the trial here were substantially different. Defendants do not allege, let alone demonstrate, that their alternate theory of relevance became apparent during either their case or the People’s. They cite only a single remark from the People’s summation, a remark which passed without objection or request for relief by them. In *316 Mandel, the excluded evidence was directly linked to a specific and unique fact expressly raised and relied upon by the defense. Here the new theory of admissibility remains unclear, even with the advantage of hindsight unavailable to the Trial Judge. Certainly the trial court did not act arbitrarily when, in the absence of an objection, it failed to discern a nascent due process or Sixth Amendment violation in a rhetorical question contained in the People’s summation. Nor can Mandel be read as dispensing with established rules of preservation. While the trial court may have a duty in certain circumstances to reverse a CPL 60.42 determination, this was not such an instance.
III.
As an alternate basis for reversal, defendants contend the trial court erred in refusing to instruct the jury specifically on the mistake of fact defense and on intent as an element of first degree rape and sodomy. They assert that the jury could reasonably have found from the evidence adduced at trial that although the complainant had not consented to sexual relations, defendants mistakenly believed that she had.[3] Under those circumstances, they say, their mistaken belief negated the intent necessary for a finding of guilt on the various counts.
The Penal Law provides that a defendant is guilty of rape, first degree, or sodomy, first degree, when he or she engages in sexual intercourse or deviate sexual intercourse by forcible compulsion (Penal Law §§ 130.35, 130.50). The People must also establish the victim’s lack of consent (Penal Law § 130.05 [1]), but lack of consent results from forcible compulsion (Penal Law § 130.05 [2] [a]). Though the statutes are silent on the subject, intent is implicitly an element of these crimes (Penal Law § 15.15 [2]). The intent required is the intent to *317 perform the prohibited act — i.e., the intent to forcibly compel another to engage in intercourse or sodomy.
The question is whether the court’s charge, when viewed in its entirety, adequately conveyed to the jury that the defendants acted with the necessary culpable mens rea.[4] The court’s instructions on forcible compulsion were as follows:
"the third and final element [the People must prove] is that the lack of [complainant’s] consent resulted from the use of forcible compulsion * * * "Forcible compulsion means to compel by either use of physical force, or a threat, express or implied, which places a person in fear of immediate death or physical injury to herself.”
Manifestly, it is unnecessary to forcibly compel another to engage in sexual acts unless that person is an unwilling participant. Thus, the jury, by finding that defendants used forcible compulsion to coerce the victim to engage in sodomy and intercourse, necessarily found that defendants believed the victim did not consent to the sexual activity. The instructions given covered the defense theory and the court did not commit reversible error in declining to give additional instructions on mens rea or mistake of fact.
IV.
We have reviewed defendants’ remaining contentions and find them without merit.
Accordingly, in each case, the order of the Appellate Division should be affirmed.

. (See generally, Tuerkheimer, A Reassessment and Redefinition of Rape Shield Laws, 50 Ohio St LJ 1245; State v Budis, 243 NJ Super 498, 506, n 1, 580 A2d 283, 287-288, n 1.)

. Because defendants challenge only the procedural aspects of the statute and the statute’s application to their case, the other branch of the constitutional standard — whether the evidentiary restriction is disproportionate to its purposes — is not relevant here (cf., Davis v Alaska, 415 US 308, 320).

. The Penal Law recognizes three situations in which a person may be relieved of criminal liability when acting under a mistaken belief of fact: (1) when the factual mistake negates a culpable mental state required as part of the offense, (2) when the statutes defining the offense expressly allow the defense or (3) when the mistake supports a defense of justification (Penal Law § 15.20 [1] [a], [b], [c]). The statute authorizing a mistake of fact defense to sexual offenses does not apply under the facts of this case (see, Penal Law § 130.10) nor does the defense of justification. Defendants rely on section 15.20 (1) (a), a factual mistake negates a culpable mental state, contending that their mistaken belief that complainant consented to intercourse negated the requirement of intent implicit in the element of forcible compulsion.

. As a court of law examining the instructions, we must evaluate what the court stated to the jury during the charge, not its misstatements to counsel during colloquy (see, dissenting opn, at 318).