State of New York
Court of Appeals

OPINION

This opinion is uncorrected and subject to revision
before publication in the New York Reports.

No. 69
The People &c.,
   Respondent,
  v.
Sergio Cerda,
   Appellant.

Donna Aldea, for appellant.
Donald Berk, for respondent.

LYNCH, J.:

On this appeal, the Court is tasked with determining whether the trial court erred in applying New York's Rape Shield Law (*see* CPL 60.42) to exclude forensic evidence proffered by defendant to demonstrate that someone else caused the complainant's injuries. We answer that question in the affirmative and conclude that, under the facts of this case,

- 1 -

the trial court's erroneous application of the Rape Shield Law deprived defendant of his constitutional right to present a defense. Accordingly, we reverse and order a new trial.

I.

Defendant was charged with two counts of first degree sexual abuse arising from allegations that he digitally penetrated his minor relative's vagina and touched her breasts. The prosecution's theory was that defendant, then over 60 years old, committed the crime when he was babysitting the complainant and two other younger relatives.

According to the evidence at trial, one evening when these children were under his care, defendant was sitting next to the complainant on a couch where they were watching television with blankets draped over their laps. The complainant testified that defendant got under the blanket she was using, raised her right leg to her chest, rolled the bottom part of her pants leg up to her thigh, slid his hand underneath the rolled-up portion, and placed a finger into her vagina, forcefully moving it in and out. The complainant also alleged that defendant fondled her breasts. Thereafter, the complainant went to the bathroom, locked the door, and texted her mother to come home, revealing that defendant had touched her inappropriately.

Defendant took the stand at trial and denied the allegations, recounting that the complainant was angry at him for speaking ill of her father. Defendant testified that, after realizing that the complainant had remained in the bathroom, he went to check on her and she complained of a stomachache. The complainant's relative was asked whether she saw "anything at all unusual happen while [she] w[as] sitting on the couch," and she answered in the negative, adding that defendant's hands were over the blanket. She was specifically

asked whether she saw defendant touch the complainant and stated, "[t]o joke around with her, yes." A picture of the underwear complainant was wearing that evening was entered into evidence and showed a large, dark colored, stain in the crotch area.

The complainant underwent a sexual assault examination in the hours after the alleged crime. The prosecution introduced the medical records from this examination into evidence, which revealed at least two small petechiae – i.e., "burst blood vessel[s]" – on the complainant's hymen, as well as a deep hymenal notch. Swabs of the complainant's vulva and vagina were also taken. A forensic examination of the evidence performed by the Nassau County Office of the Medical Examiner confirmed the presence of the complainant's saliva on the vulvar swab. An analysis of a saliva mixture taken from a stain on the complainant's underwear revealed three contributors: the complainant and two unidentified males. The vaginal swab revealed prostate specific antigen, which is an element of semen but can also be found in a number of bodily fluids. No spermatozoa were present in the vaginal swab and, thus, the presence of semen was not confirmed.

At the start of the trial, defendant moved in limine for a ruling on the admissibility of the forensic reports. Defense counsel argued that the forensic reports were not the type of evidence barred by CPL 60.42 because the forensic findings offered plausible alternative explanations for the petechiae the prosecution was seeking to attribute to him, indicating that they were consistent with masturbation or sexual contact with a third-party. Defendant maintained that "to exclude [the forensic reports] would curtail [his] ability to offer a sufficient and adequate defense." The prosecution opposed defendant's motion, arguing that the reports were inadmissible because the forensic findings implied that the

complainant "had sex or oral sex with somebody . . . earlier" and, thus, that she was "promiscuous[.]" The trial court denied defendant's motion and excluded the evidence under CPL 60.42, concluding that the theories advanced by defense counsel were "very speculative" and the forensic findings risked "confus[ing] the jurors."

At trial, the prosecution presented the testimony of a pediatrician specializing in evaluating victims of sex abuse to establish that the petechiae on the complainant's hymen were consistent with digital penetration. In that respect, the expert confirmed that petechiae result from "pressure or force[,]" and that their presence on the hymen is an abnormal finding indicative of an "injury." Although the expert had "never seen petechiae during a normal genital exam," explaining that they were unlikely to result from masturbation or accidental injury, he conceded on cross-examination that intense vaginal rubbing or scratching with a lot of pressure could, in theory, cause petechiae to form. When asked whether petechiae "can be visualized inside the vagina and not have anything to do with sexual abuse," the expert clarified that he had "only seen it in the context of penetration, . . . be that sexual abuse or sex." As for the deep hymenal notch, the expert noted that it was "highly concerning" for a penetration injury; however, because he could not determine that the notch went to the base of the hymen, he could not rule out that the notch was a normal part of the complainant's anatomy.

In his opening statement, defense counsel commented that the jury would hear medical evidence from the complainant's sexual assault examination, but that such evidence was "scant" and "suggestive of a number of other types of activity or behavior that are completely innocent [and] that have nothing to do with [defendant] or the

allegations that were made that night." Defense counsel reiterated this theme on summation, suggesting that the petechiae resulted from self-inflicted forcible "rubbing or scratching" due to irritation relating to fecal matter on the complainant's underwear.  In her summation, the prosecutor stated that there was "nothing in the medical record to support" the contention that the complainant injured herself, emphasizing that such evidence "doesn't exist" and that "it didn't happen."  The jury convicted defendant of the sexual abuse charge related to the alleged digital penetration of the complainant's vagina, but acquitted defendant of the other count.  The court sentenced defendant to three years of imprisonment followed by five years of postrelease supervision.

On appeal, the Appellate Division affirmed the judgment, rejecting defendant's argument that the trial court improperly excluded the forensic evidence under CPL 60.42 and concluding that defendant "was given ample opportunity to develop evidence at trial to support his defenses" (192 AD3d 1041, 1042 [2d Dept 2021]).  The Appellate Division held that defendant's additional contentions were without merit.  A Judge of this Court granted defendant leave to appeal (37 NY3d 971 [2021]).[1]

II.

Under CPL 60.42, "[e]vidence of a victim's sexual conduct" is inadmissible in a prosecution for a sex offense defined in Penal Law article 130 unless one of five enumerated exceptions applies (*see People v Halter*, 19 NY3d 1046, 1049 [2012]; *People*

---

[1] The Court heard oral argument on the appeal on May 19, 2022 and later ordered reargument (38 NY3d 1029 [2022]), which was held on September 14, 2023.

*v Scott*, 16 NY3d 589, 593, 594 [2011]; *People v Williams*, 81 NY2d 303, 311 [1993];

*People v Mandel*, 48 NY2d 952, 953 [1979], *appeal dismissed and cert denied* 446 US 949

[1980]).  In enacting CPL 60.42, the legislature was concerned that "testimony about the

sexual past of the victims of sex crimes often serves solely to harass the victim and confuse

the jurors" (*Williams*, 81 NY2d at 312 [citations omitted]).  Accordingly, CPL 60.42 "put

to rest the now-discredited rationale that a victim's past 'unchastity' is probative of present

consent and recognized that such evidence is typically of little or no relevance and may

seriously prejudice the prosecution of sex crimes" (*id.* [citations omitted]).[2]

At the same time, "the Constitution guarantees criminal defendants a meaningful

opportunity to present a complete defense" (*Crane v Kentucky*, 476 US 683, 690 [1986]

[internal quotation marks and citations omitted]; *see Chambers v Mississippi*, 410 US 284,

294 [1973] ["The right of an accused in a criminal trial to due process is, in essence, the

right to a fair opportunity to defend against the State's accusations"]; *People v Deverow*,

38 NY3d 157, 164 [2022]; *People v Boyd*, 31 NY3d 953, 955 [2018]; *People v Spencer*,

20 NY3d 954, 956 [2012]).  This right "does not give criminal defendants carte blanche to

circumvent the rules of evidence" (*Deverow*, 38 NY3d at 164 [internal quotation marks

and citation omitted]; *see People v Jin Cheng Lin*, 26 NY3d 701, 727 [2016]).

Nevertheless, "a trial court must not apply [evidentiary] rules mechanistically to defeat the

ends of justice" (*Deverow*, 38 NY3d at 164 [internal quotation marks omitted], citing

---

[2]  Although consent is not at issue in this case since the complainant was below the age of consent, the issue of witness credibility is directly implicated.

*Chambers*, 410 US at 302). Consequently, "[a] blanket exclusion [under CPL 60.42] which covered clearly *relevant* sexual conduct evidence would unduly circumscribe a defendant's" constitutional right in this regard (*People Jovanovic*, 263 AD2d 182, 195 [1st Dept 1999] [emphasis in original], *appeal dismissed* 95 NY2d 846 [2000]).

Recognizing as much, the legislature enumerated five exceptions to CPL 60.42's evidentiary proscriptions. The first four exceptions "allow evidence of a complainant's prior sexual conduct in narrowly defined factual circumstances," whereas the fifth "is a broader 'interest of justice' provision vesting discretion in the trial court" (*Williams*, 81 NY2d at 311). "The exceptions . . . recognize that any law circumscribing the ability of the accused to defend against criminal charges remains subject to limitation by constitutional guarantees of due process and the right to confront the prosecution's witnesses" (*id.* at 312 [citations omitted]).

III.

Defendant argues that the forensic evidence was admissible under several of the exceptions set forth in CPL 60.42. We need not address every basis raised because we conclude that the trial court erred in denying admission of the evidence under CPL 60.42 (5). Under this subdivision, evidence of a victim's sexual conduct may be admitted in evidence during a sex crime prosecution when it "is determined by the [trial] court after an offer of proof by the accused . . . to be relevant and admissible in the interests of justice" (CPL 60.42 [5]). "Offer of proof is not a term of art but its generally accepted meaning . . . is to summarize the substance or content of the evidence" (*Williams*, 81 NY2d at 314 [internal quotation marks and citation omitted]). In his motion in limine, defense counsel

delineated the findings contained in the forensic reports and explained how they constituted "evidence of something other than . . . defendant having engaged in inappropriate and unlawful sexual activity with [the complainant]." This was a sufficient offer of proof under *Williams* (81 NY2d at 314).

As for the relevance of the forensic findings, evidence is relevant "if it tends to prove the existence or non-existence of a material fact, i.e., a fact directly at issue in the case" (*People v Primo*, 96 NY2d 351, 355 [2001]; *see People v Frumusa*, 29 NY3d 364, 371 [2017], *rearg denied* 29 NY3d 1110 [2017]). "We recognize that, 'in the interests of justice,' evidence of a complainant's sexual conduct may be admissible [in a sex crime prosecution] if it is relevant to a defense" (*Scott*, 16 NY3d at 594, citing *Jovanovic*, 263 AD2d at 198). In *People v Scott*, this Court considered whether, in a prosecution for both forcible and statutory rape, evidence of a complainant's sexual conduct with another individual at the same party at which the defendant was alleged to have raped the complainant should have been admitted under CPL 60.42 (5). The Court answered that question in the negative, but agreed with the trial court that "the complainant's sexual conduct [on the evening in question] *would be relevant* to [defendant's] defense if the People introduced evidence of her bruising caused by sexual contact and attributed such evidence to [the defendant]," ultimately noting that the People did not offer any such evidence of bruising in that case (*Scott*, 16 NY3d at 594 [emphasis added]). Here, by comparison, the prosecution attributed the complainant's petechial injuries to defendant and had an expert testify that such injuries were consistent with the criminal conduct of which he was accused. Thus, the forensic reports, which contained findings that offered

plausible alternative explanations for the petechial injuries, were relevant to defending against that theory (*see Scott*, 16 NY3d at 594; Mem of Assemblyman Fink, 1975 NY Legis Ann, at 48 [Under CPL 60.42, "(r)ebuttal of the (P)eople's evidence that . . . the accused was the cause of pregnancy, injury, or disease of the victim" is allowed]).  Although trial courts may, of course, "exclude relevant evidence if its probative value is outweighed by the prospect of . . . undue prejudice to the opposing party, confusing the issues or misleading the jury" (*Primo*, 96 NY2d at 355), the evidence here – consisting of forensic findings – should have been admitted because it directly responded to the prosecutor's theory that defendant alone caused the complainant's injuries.

The constitutional right to present a defense encompasses "the right to put before a jury evidence that might influence the determination of guilt" (*Taylor v Illinois*, 484 US 400, 408 [1988] [internal quotation marks and citations omitted]; *accord Jovanovic*, 263 AD2d at 184).  Defendant's entire defense was premised upon demonstrating that the complainant's allegations against him were untrue in that the petechial bruising was caused by her own actions or a third-party.  The forensic evidence confirming the presence of the complainant's saliva in the vicinity of her internal injuries, juxtaposed against the expert testimony that such injuries were consistent with digital penetration, speaks to an alternative, innocent explanation for the cause of the identified injuries and bears on the issue of guilt or innocence.  The same may be said, albeit to a lesser extent, as to the detection of the male DNA in the mixed saliva sample and prostate specific antigen in the vicinity of the complainant's injuries.  We are mindful that the laboratory reports did not exclude defendant as a contributor to the male DNA detected from the complainant's

underwear and that no further comparisons could be made from the mixed saliva sample. At the same time, the reports did identify two male contributors. Although the prosecution maintains that the forensic findings are inconclusive, far from exculpatory, and create more questions than they answer, the inferences to be drawn from the findings present an issue of weight for the jury to assess, not admissibility (*see People v Wesley*, 83 NY2d 417, 427 [1994]; *People v Dackowski*, 50 NY2d 962, 963 [1980]; *People v White*, 40 NY2d 797, 799-800 [1976]). The dissent also deems defendant's offer of proof to be inconclusive, but it is neither the role of the trial court nor this Court to make that assessment. There is a difference between determining whether evidence is relevant for purposes of applying the CPL 60.42 (5) exception, and whether that same evidence is decisive or not. Relevance is for the court to determine, decisiveness for the jury. As difficult and traumatic as child sex abuse cases are, the operative point is that the proffered evidence is medical documentation in support of defendant's alternative theory for complainant's injuries. By pursuing this defense, defendant did not seek to use the forensic evidence in violation of the statute, to impugn complainant's character by presenting her as a promiscuous female who could not be believed – a tactical attack based on now-rejected views of female sexuality.

As for the Appellate Division's conclusion that defendant "was given ample opportunity to develop evidence at trial to support his defenses" (192 AD3d at 1042), it is true that the trial court did allow defendant to introduce the photograph of complainant's underwear and argue that she injured herself by rubbing her vaginal area in response to irritation related to the stain depicted therein. However, such evidence is no substitute for an argument premised on the forensic analysis performed. By permitting defense counsel

to suggest to the jury that there were alternative innocent explanations for the petechiae, yet excluding the most viable evidence to support that premise, the trial court's ruling deflated the strength of the defense (*see People v Diaz*, 20 NY3d 569, 576 [2013]; *People v Labenski*, 134 AD2d 907, 908 [4th Dept 1987]; *see also People v Wright*, 25 NY3d 769, 783 [2015]; *People v Becoats*, 17 NY3d 643, 655-656 [2011], *cert denied* 566 US 964 [2012]). The prejudice to defendant was compounded when the prosecutor emphasized to the jury on summation that evidence of such alternative theories "doesn't exist," despite knowing full well the findings in the precluded forensic reports.

We conclude that the trial court's exclusion of the forensic evidence "deprived defendant of a meaningful opportunity to present a complete defense" (*Deverow*, 38 NY3d at 168 [internal quotation marks omitted], citing *Crane*, 476 US at 690) and constituted an abuse of discretion as a matter of law under CPL 60.42 (5). Because the error cannot be considered harmless under the facts presented (*see Deverow*, 38 NY3d at 168; *People v DiPippo*, 27 NY3d 127, 141 [2016]), a new trial is warranted. Far from being a "degradation of the protections afforded by the Rape Shield Law" as the dissent unfortunately asserts (*see* dissenting op at 2), our decision to apply the statutory exception is compelled by the nature of the evidence presented and the fair trial tenets of the Constitution. Our determination renders academic defendant's remaining contentions.

Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.

CANNATARO, J. (dissenting):

The child victim in this case alleged that she was sexually abused by defendant, an older relative. She immediately reported the incident to her mother, who took her to the hospital where she underwent a number of invasive medical examinations. At trial, defendant sought to introduce into evidence inconclusive DNA and serology reports from

- 1 -

these examinations, arguing that the interests-of-justice exception to the Rape Shield Law applied (CPL 60.42 [5]).  The trial judge denied the application and excluded the evidence.

Because these reports provided only the slightest basis for defendant to suggest that the child had engaged in sexual activity—either with another individual or herself—the trial court saw fit to exclude this evidence under the Rape Shield Law.  Indeed, the Rape Shield Law was designed to protect victims from this very type of evidence.  Yet today, the majority misapplies an exception to the Rape Shield Law and orders a new trial, where the victim will be faced with the defense's suggestion that, sometime before this incident that occurred when she was 11 years old, she must have either engaged in sexual contact with an unidentifiable man or injured herself through vigorous masturbation.  This degradation of the protections afforded by the Rape Shield Law, not to mention the trauma inflicted on this victim, is completely unwarranted.  I dissent.

Forcing a child to testify at trial to the details of sexual abuse by a trusted individual in their life invariably risks retraumatizing them.  And given the unique challenges in bringing these cases to trial, it should come as no surprise that, in some offices, prosecutors decline to prosecute roughly half of all reported cases of child sexual abuse (*see* Theodore P. Cross et al., *Prosecution of child abuse: A meta-analysis of rates of criminal justice decisions*, Trauma, Violence & Abuse, 4(4), 323-340 [2003]; *see also* Linda M. Williams, et al., *Prosecution of Child Sexual Abuse: Challenges in Achieving Justice*, Wellesley, MA: Wellesley Centers for Women [April 2022] https://www.wcwonline.org/images/pdf/2022-williams-block-pcsa-white-paper.pdf [last accessed October 12, 2023]).  Historically, less

than 10% of reported allegations of child sex abuse have gone to trial (*see* Ellen Gray, Unequal justice: The prosecution of child sexual abuse [Free Press 1993]).

The Rape Shield Law provides some protection for these victims. Under that statute, CPL 60.42, evidence of a victim's sexual conduct is generally inadmissible in a prosecution for a sex offense. The law was enacted in response to concerns that "the manner in which rape trials [were then] conducted serves to discourage prosecutions, demean complainants, and lead to acquittals of guilty defendants," and was designed to achieve "two desirable objectives: [i]t removes from the trial of an alleged rapist the mini-trial of his alleged victim; and equally if not more important, it should encourage rape victims to cooperate wholeheartedly in the search for and prosecution of their attackers" (Bill Jacket, L 1975, ch 230). We have previously explained that the statute acknowledges that evidence of a victim's past sexual conduct is typically irrelevant to issues of consent or credibility and, instead, "often serves solely to harass the victim and confuse the jurors" (*People v Williams*, 81 NY2d 303, 312 [1993]).

The statute expressly contemplates that there are "instances where evidence of a complainant's sexual history might be relevant and admissible" (*id.*) and has set forth specific exceptions. The statute allows a trial court to admit such evidence where it "is determined by the court after an offer of proof by the accused outside the hearing of the jury, or such hearing as the court may require, and a statement by the court of its findings of fact essential to its determination, to be relevant and admissible in the interests of justice" (CPL 60.42 [5]). Importantly, although the constitution requires that criminal defendants must have "'a meaningful opportunity to present a complete defense'" (*Holmes v South*

*Carolina*, 547 US 319, 324 [2006], quoting *Crane v Kentucky*, 476 US 683, 690 [1986]), that right is not absolute. Rather, "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury" (*Holmes*, 547 US at 326; *see also Montana v Egelhoff*, 518 US 37, 42 [1996]; *Michigan v Lucas*, 500 US 145, 149 [1991]). Stated otherwise, "[e]vidence 'of merely slight, remote or conjectural significance' will ordinarily be insufficiently probative to outweigh the[] countervailing risks" (*People v Primo*, 96 NY2d 351, 355-356 [2001] [citations omitted]).

While DNA evidence and other forensic scientific testing techniques offer the possibility of greater objectivity and certainty in these difficult cases, there are times when the results of the analysis of such evidence are so inconclusive as to have little or no probative value. This is such a case.

The laboratory report that defendant sought to introduce explained that the Nassau County Office of the Medical Examiner conducted autosomal STR DNA typing on a saliva stain from the victim's underwear and found a mixture of DNA from three contributors, including the victim. The laboratory then performed Y-STR DNA typing (to isolate male DNA) on the saliva stain and issued a follow-up laboratory report indicating two male contributors to the DNA mixture. The report explained that "[b]ased on the mixture ratio, no comparisons can be made." As further explained in the report, where "a statistical qualification [can]not be made due to the mixture ratio . . . the results are considered not suitable for comparisons and no comparisons (inclusions or exclusions) can be made."

At the start of the trial, defense counsel sought a ruling permitting admission of the DNA and serology reports into evidence. After acknowledging that the Medical Examiner's Office represented that no further testing could be done to determine the identity of the unknown male contributors, defense counsel noted that defendant had offered to provide a sample of his DNA for comparison. Counsel then stated their intention "to use an expert, presumably the[ People's] witness, to testify about . . . those findings within the underwear as well as the meaning or potential meaning of those findings within the underwear." Defendant argued that the Rape Shield Law was inapplicable to this evidence but that, in any event, the evidence was admissible under the statutory interests-of-justice exception, as it was exculpatory. The People opposed the application, noting that they would not be introducing any DNA evidence on their case-in-chief, that the inconclusive DNA results would be confusing to the jury and that the reports should be precluded under the Rape Shield Law.

The court applied the Rape Shield Law and excluded the DNA and serology reports, observing that, although male DNA was present in the saliva sample, "the relevance of that is very speculative."[*] The court found that the proffered evidence was "going to confuse the jurors" as they might conclude that "the victim in this case did have sexual contact or conduct with another individual . . . [which is] exactly what the rape shield law is designed to prevent."

---

[*] The court also characterized the presumptive presence of semen based on the detection of prostate specific antigen on the victim's vaginal swabs as "far from conclusive."

It was well within the trial court's discretion to determine that the laboratory reports should be excluded under CPL 60.42 (5) because they would have caused juror confusion and speculation, particularly as to possible sexual activity by the child victim about which there was no record evidence. "Under the abuse of discretion standard, '[w]e are not free to substitute our judgment for that of the . . . court [of first instance] when conflicting facts and inferences reasonably support a decision for or against a certain result.' Instead, the question is whether 'the case presented shows no room for the exercise of reasonable discretion'" (*People v Cook*, 34 NY3d 412, 423 [2019], quoting *People v Branch*, 83 NY2d 663, 667 [1994]). As noted above, defendant's initial application to the trial court was that he wanted an unidentified expert witness to testify to "the meaning or potential meaning of" the laboratory test results on the basis that they were potentially exculpatory. His "offer of proof" was the test results themselves—evidence that is properly characterized as inconclusive. Moreover, defendant did not employ an expert who could attach significance to the laboratory's findings by explaining or interpreting the significance of the results of the forensic testing that would have provided the jury with a nonspeculative basis upon which to rest an alternative explanation for the victim's injury. Instead, the defense contemplated using the People's witness to explain the DNA results—despite the fact that the People had no intention of either introducing the test results or calling any witness from the Medical Examiner's Office to testify at trial. In light of the above, the unexplained forensic report did not offer "plausible alternative explanations" for the victim's injuries (*see* majority op. at 9).

Although *People v Scott* contemplates that evidence of other sexual conduct would be "relevant" to counter evidence of injury introduced by the People and attributed to defendant (16 NY3d 589, 594 [2011]), that is not the case here because the laboratory reports do not establish that other sexual conduct occurred. Moreover, the laboratory reports did not exclude defendant as a contributor of the male DNA and, therefore, the reports neither exculpate defendant nor inculpate any other individual. As to the presence of the victim's own saliva, defendant's contention that she caused her own injuries is conjectural at best, and defendant was permitted to argue this theory to the jury. Lastly, the language in *Scott* relied on by the majority went only to relevancy—the evidence of other sexual activity would have been relevant if the People introduced evidence of bruising—not whether the trial court would have abused its discretion if it nevertheless declined to admit that proof (*see* 16 NY3d at 594).

Under these circumstances, admission of the reports would not tend to establish a defense to the crime. Moreover, whatever limited relevancy the reports might have had, I cannot conclude that it was an abuse of discretion as a matter of law for the trial court to exclude this evidence under the Rape Shield Law.

While the majority insists that defendant has not sought to "impugn complainant's character" (majority op. at 10), the record and defendant's litigation strategy throughout this case demonstrates the opposite. Indeed, the thrust of the litigation strategy, continued in the briefing to this Court, was that the People's depiction of the victim as innocent and naive was false and misleading—in fact, appellate counsel described the theory of the defense as asserting that the victim "was a sexually experienced young girl" (Tr. of Oral

Arg. at 24:24 [May 19, 2022]).  Nonetheless, the majority now holds that the Rape Shield

Law does not apply, that defendant was deprived of the right to present a full defense, and

that introduction of an inconclusive, confusing, and speculative forensic report was

required.  Because admission of the forensic report would have inflicted the precise harm

that the Rape Shield Law was designed to prevent—it would have served "solely to harass

the victim and confuse the jurors" (*Williams*, 81 NY2d at 312)—I would find that the trial

court's preclusion of the reports was an appropriate exercise of discretion under well-

established evidentiary rules.

Order reversed and a new trial ordered. Opinion by Judge Lynch. Chief Judge Wilson and
Judges Rivera, Troutman and Halligan concur. Judge Cannataro dissents and votes to
affirm in an opinion, in which Judge Garcia concurs. Judge Singas took no part.

Decided October 19, 2023