People v Johnson (2024 NY Slip Op 01212)

People v Johnson

2024 NY Slip Op 01212

Decided on March 7, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 7, 2024

110875
[*1]The People of the State of New York, Respondent,
v
Isaiah M. Johnson, Appellant.

Calendar Date:January 10, 2024

Before:Clark, J.P., Lynch, Reynolds Fitzgerald, McShan and Powers, JJ.

John A. Cirando, Syracuse, for appellant.
Weeden A. Wetmore, District Attorney, Elmira (Anne H. Stark of counsel), for respondent.

McShan, J.
Appeal from a judgment of the County Court of Chemung County (Christopher P. Baker, J.), rendered October 29, 2018, upon a verdict convicting defendant of the crimes of criminal sexual act in the first degree (three counts), criminal sexual act in the second degree and course of sexual conduct against a child in the first degree.
In January 2018, defendant was charged by indictment with six counts of criminal sexual act in the first degree (counts 1, 2, 3, 6, 7 and 8), one count of criminal sexual act in the second degree (count 4), and one count of course of sexual conduct against a child in the first degree (count 5) based upon allegations that he engaged in oral sexual conduct with five victims, each less than 13 years old, between June 2014 to November 2017. Defendant moved to, among other things, suppress certain oral and written statements he provided to law enforcement as being involuntary, requested that the People notify him of any criminal activity or prior bad acts they intended to use at trial, and moved to dismiss the indictment for insufficient evidence before the grand jury. The People, among other things, stipulated to a Huntley hearing to establish the voluntariness of defendant's statements and, as to defendant's Molineux request, asserted that there were no prior uncharged bad acts they intended to use at trial. County Court denied defendant's motion to dismiss the indictment and, following a Huntley hearing, the court found defendant's statements to be voluntary and denied his motion to suppress. Following a jury trial, defendant was convicted of counts 2, 4, 5, 6 and 7 — pertaining to four of the five victims — and acquitted of counts 1, 3 and 8. Defendant was sentenced to four concurrent prison terms of 17 years, to be followed by 15 years of postrelease supervision, on counts 2, 5, 6 and 7, and to a lesser concurrent prison term on count 4. Defendant appeals.
We affirm. Defendant contends that his convictions are not supported by legally sufficient evidence, contending that the testimony of the four victims was imprecise and vague and that the confessions elicited by investigators and introduced at trial were coerced and false. For these same reasons, he contends that the verdict is against the weight of the evidence. "Defendant's legal sufficiency arguments are unpreserved owing to his failure to identify the specific grounds now raised on appeal in his general motion to dismiss at the conclusion of the People's case" (People v Doane, 212 AD3d 875, 876 [3d Dept 2023], lv denied 39 NY3d 1154 [2023]; see People v Walker, 191 AD3d 1154, 1156 [3d Dept 2021], lv denied 37 NY3d 961 [2021]). "Nevertheless, [we may assess his] weight of the evidence challenge, which bears no preservation requirement, [and] also requires consideration of the adequacy of the evidence as to each element of the crimes" (People v Decker, 218 AD3d 1026, 1029 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 40 NY3d 1012 [2023]).[*2]
As charged in counts 2, 6 and 7, "[a] person is guilty of criminal sexual act in the first degree when he or she engages in oral sexual conduct or anal sexual conduct with another person . . . [w]ho is less than [11] years old" (Penal Law § 130.50 [3]). As to count 5, "[a] person is guilty of course of sexual conduct against a child in the first degree when, over a period of time not less than three months in duration[,] . . . he or she engages in two or more acts of sexual conduct, which includes at least one act of sexual intercourse, oral sexual conduct, anal sexual conduct or aggravated sexual contact, with a child less than [11] years old" (Penal Law § 130.75 [1] [a]). As to the remaining conduct charged in count 4, "[a] person is guilty of criminal sexual act in the second degree when . . . being [18] years old or more, he or she engages in oral sexual conduct . . . with another person less than [15] years old" (Penal Law § 130.45 [1]).[FN1]
At trial, each of the victims provided an account of the sexual conduct that defendant perpetrated along with the timing and location of such acts. According to victim A, the first time that defendant performed a sexual act on him occurred at a mutual family member's house, when defendant touched victim A's penis in bed, and then performed oral sex on him.[FN2] Victim A testified to a second instance that occurred at another family member's house and was consistent with the first incident. Victim A stated that he had witnessed defendant engaged in the same conduct with victims B and C. According to victim B, their first encounter occurred on or around July 2015, when defendant performed oral sex on victim B while at a park near the victim's house. Victim B alleged that defendant last touched him in a similar manner, on or around November 2017, while he was staying the night at defendant's house. Victim B also testified that he had previously seen defendant touch victim C and victim D in the same way while in defendant's car. According to victim C, defendant performed oral sex on him on three occasions, beginning when victim C was 10 years old and during the summer between his third and fourth grade school years. Victim C explained that the conduct occurred in the summer and that the last incident occurred during baseball season. Finally, victim D testified that defendant touched him on numerous occasions, the first occurrence being on or around the fall of 2016. According to victim D, defendant would take him, victim B, victim E, and another to an abandoned house and would perform oral sex on them. The last time victim D recalled defendant performing oral sex on him was at defendant's house in November 2017.
The People also introduced the testimony of the investigators who interviewed defendant, along with the recordings of those interviews. During the first interview, defendant confessed to performing oral sex on each of the victims as charged in the indictment. In his accompanying written statement, defendant [*3]admitted to performing oral sex on victim A and victim B, in response to a threat from victim A that he would tell his mother about prior sexual contact between him and defendant. Defendant also admitted that he engaged in oral sexual contact with victim C on one occasion at defendant's home, and with victim D in defendant's vehicle. During the second interview, defendant confessed to engaging in oral sex acts with victims B, C and D. In his written statement following the second interview, defendant reiterated that he was aware of the rumors that he had engaged in, among other things, oral sexual conduct with victims B, C and D, and admitted that he had in fact engaged in such acts.
Based upon the sum of testimony and documentary evidence, we find that defendant's convictions are not against the weight of the evidence. Defendant's contention that the victims' testimony lacked sufficient detail is unavailing. To this end, defendant's two confessions and his accompanying written statements, considered alongside the testimony of each of the victims relative to the oral sexual conduct and the respective victims' age at the time of the offenses, was sufficient to establish the elements of both first- and second-degree criminal sexual act (see Penal Law §§ 130.45 [1], 130.50 [3]; People v Atkinson, 185 AD3d 1447, 1449 [4th Dept 2020], lv denied 35 NY3d 1111 [2020]; People v Lapi, 105 AD3d 1084, 1085 [3d Dept 2013], lv denied 21 NY3d 1043 [2013]; People v Artis, 90 AD3d 1240, 1240 [3d Dept 2011], lv denied 18 NY3d 955 [2012]; see generally People v Barcomb, 256 AD2d 926, 927 [3d Dept 1998], lv denied 94 NY2d 798 [1999]). Specific to his conviction for course of sexual conduct against a child in the first degree, the testimony of victim C was sufficiently detailed to establish that defendant engaged in the proscribed sexual acts on two or more occasions over a period greater than three months in duration (see Penal Law § 130.75 [1] [a]; People v Carter, 219 AD3d 1703, 1704 [4th Dept 2023], lv denied ___ NY3d ___ [Jan. 26, 2024}; People v Saunders, 199 AD3d 719 [2d Dept 2021], lv denied 37 NY3d 1164 [2022]; see also People v Werkheiser, 171 AD3d 1297, 1301 [3d Dept 2019], lv denied 33 NY3d 1109 [2019]). Accordingly, even assuming that the jury could have reached a different determination as to the credibility of the victims' testimony and the truthfulness of defendant's confession, thus allowing for a different verdict, "when we view the evidence in a neutral light and defer to the jury's superior position to determine witness credibility, we are satisfied that the verdict [is] in accord with the weight of the evidence" (People v Lapi, 105 AD3d at 1086; see People v Mack, 217 AD3d 1518, 1519 [4th Dept 2023], lv denied 40 NY3d 951 [2023]; People v Warrington, 155 AD3d 1450, 1451 [3d Dept 2017]).
Turning to defendant's contention that the denial of his motion to suppress various statements made to law enforcement was in error, we find his argument is without [*4]merit. "The People bear the burden of proving, beyond a reasonable doubt, that a defendant's statements are voluntary. Although the inference of voluntariness is more easily drawn where, as here, Miranda warnings have been timely given, the People must still show that the defendant's statements were not products of coercion, either physical or psychological. Determining whether a statement is voluntary is a factual issue governed by the totality of the circumstances and the credibility assessments of the suppression court in making that determination are entitled to deference" (People v McCarty, 221 AD3d 1360, 1364-1365 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied ___ NY3d ___ [Jan. 30, 2024]; see People v Bermudez, 217 AD3d 1261, 1263-1264 [3d Dept 2023], lv denied 40 NY3d 996 [2023]; People v Davis, 196 AD3d 918, 919-920 [3d Dept 2021]).
The audiovisual recordings of both of defendant's interviews were introduced at the suppression hearing and demonstrated that defendant was read, and confirmed his understanding of, his Miranda rights at the beginning of each interview. The first interview took place in December 2017 and lasted approximately one hour. For the initial 25 minutes of questioning, defendant suggested that his accusers' stories were fabricated and that his interaction with victim A was not sexual. Defendant then asked how long he would have with his family before he would be imprisoned if he confessed, before eventually providing a confession. As to the second interview, which occurred in January 2018, defendant voluntarily arrived at the police station with his grandmother and girlfriend, indicating that he wanted to address the rumors that he had engaged in inappropriate contact with young children. After defendant and the investigator had a short discussion with the grandmother and the girlfriend, the investigator asked to speak to defendant alone. After approximately 40 minutes of questioning, defendant again provided a confession. To the extent that defendant contends that the officers employed unduly coercive tactics throughout the interviews by insisting that defendant's initial denials were untrue, our review of the recording fails to establish that the form of interrogation was "so fundamentally unfair as to deny [him] due process" (People v Jeremiah, 147 AD3d 1199, 1203 [3d Dept 2017] [internal quotation marks and citation omitted], lv denied 29 NY3d 1033 [2017]; see People v McCarty, 221 AD3d at 1365). Similarly, we find no merit to defendant's contention that the interrogating officer in the first interview utilized improper deception by suggesting that he would be "in the same amount of trouble" regardless of the number of victims that he ultimately confessed to having inappropriate sexual contact with. The officer's statement was made during a discussion pertaining to defendant's numerous accusers and, when considered in the context of the entire interview, did not constitute "a promise or [*5]threat . . . that could induce a false confession" (People v Tarsia, 50 NY2d 1, 11 [1980]; see People v Jackson, 217 AD3d 1271, 1272 [3d Dept 2023], lv denied, 40 NY3d 951, [2023]; People v Jeremiah, 147 AD3d at 1203). In sum, the record reflects that defendant's confessions were not the product of "long hours of questioning and other techniques which, when viewed as a whole, could be characterized as an emotional battering that could overcome defendant's will" (People v Williamson, 245 AD2d 966, 967 [3d Dept 1997] [internal quotation marks, brackets, ellipsis and citation omitted], lv denied 91 NY2d 946 [1998]; see People v McCarty, 221 AD3d at 1366; People v Youngs, 175 AD3d 1604, 1606 [3d Dept 2019]; People v Warrington, 146 AD3d 1233, 1234-1235 [3d Dept 2017], lv denied 29 NY3d 1038 [2017]). Accordingly, we find that defendant's arguments are without merit and that County Court properly admitted defendant's oral and written statements.
Defendant next contends that County Court erred in denying his application pursuant to subdivision (5) of CPL 60.42, the Rape Shield Law, to question victim A about a past juvenile adjudication for conduct amounting to second-degree sexual abuse as well as a separate and more recent accusation of sexual misconduct. Initially, to the extent that defendant now contends that the Rape Shield Law is inapplicable to the foregoing acts, as they were premised on the victim's sexual misconduct rather than "conduct" as contemplated by the law, "such contention is not preserved for review inasmuch as it was not advanced before County Court" (People v Vandebogart, 158 AD3d 976, 979 [3d Dept 2018], lv denied 31 NY3d 1089 [2018]; compare People v Wakefield, 175 AD3d 158, 166 [3d Dept 2019], affd 38 NY3d 367 [2022], cert denied ___ US ___, 143 S Ct 451 [2022]). As to the admissibility of such proof pursuant to the discretionary provision set forth in CPL 60.42 (5), "evidence of a victim's prior sexual conduct may be introduced where such evidence is determined by the court after an offer of proof by the accused . . . , and a statement by the court of its findings of fact essential to its determination, to be relevant and admissible in the interests of justice" (People v Simonetta, 94 AD3d 1242, 1245 [3d Dept 2012] [internal quotation marks, emphasis and citation omitted], lv denied 19 NY3d 1029 [2012]; see People v Williams, 81 NY2d 303, 311 [1993]).
Defendant's offer of proof was, in essence, premised on his intent to cross-examine victim A concerning both incidents to establish that victim A had only accused defendant to deflect from his own misconduct, and that victim A had "access to all these children," which precipitated the accusations from the other victims. As to victim A's juvenile adjudication, defendant's proffer and the proof on this record fail to establish any relevant connection between such evidence and victim A's disclosure of defendant's conduct, particularly considering the lack of any details underlying [*6]the adjudication (see People v Gaylord, 194 AD3d 1189, 1190 [3d Dept 2021], lv denied 37 NY3d 972 [2021]; People v Mann, 41 AD3d 977, 979 n [3d Dept 2007], lv denied 9 NY3d 924 [2007]; see also People v Simonetta, 94 AD3d 1242, 1246 [3d Dept 2012], lv denied 19 NY3d 1029 [2012]). Defendant's assertion that the adjudication "gives weight" to the subsequent allegation against victim A lacks a logical basis to overcome the presumption favoring preclusion (see People v Williams, 81 NY2d at 315; People v Tohom, 109 AD3d 253, 274 [2d Dept 2013], lv denied 22 NY3d 1203 [2014]; People v Scott, 67 AD3d 1052, 1054-1055 [3d Dept 2009], affd 16 NY3d 589 [2011]).
Turning to the more recent allegation of inappropriate touching purportedly lodged against victim A and its connection with the disclosure of defendant's conduct, it is notable that County Court does not appear to have specifically addressed this incident in its denial of defendant's application. Nevertheless, County Court's determination appears to have encompassed both incidents and we discern no error in doing so (see People v Bernard, 203 AD3d 945 [2d Dept 2022], lv denied 38 NY3d 1187 [2022]; People v Mann, 41 AD3d at 979). The record suggests a tenuous connection between the investigation concerning victim A's alleged misconduct and his motivation to lie, as there is no indication in the record that victim A's disclosure of defendant's criminal conduct influenced the investigation in any respect (see e.g. People v Segarra, 46 AD3d 363, 364 [1st Dept 2007], lv denied 10 NY3d 816 [2008]; see also People v Torres, 169 AD3d 506, 507 [1st Dept 2019], lv denied 33 NY3d 981 [2019]; People v Tohom, 109 AD3d at 274; People v Scott, 67 AD3d at 1055; People v Perryman, 178 AD2d 916, 917 [4th Dept 1991], lv denied 79 NY2d 1005 [1992]; see generally People v Williams, 81 NY2d at 315). As such, we find that the utility of the vague allegations of improper conduct on the part of victim A for purposes of impeaching said witness on a potential motive to fabricate the allegations against defendant is speculative and, to the extent it has any merit, de minimis, such that the denial of defendant's application was not an abuse of discretion (see People v Cutting, 150 AD3d 873, 875 [2d Dept 2017], lv denied 30 NY3d 979 [2017]; People v Scott, 67 AD3d at 1055; People v Mann, 41 AD3d at 979; see also People v Serrano-Gonzalez, 146 AD3d 1013, 1015 [3d Dept 2017], lv denied 29 NY3d 952 [2017]). Moreover, were we to determine that County Court erred in precluding such evidence under any of defendant's theories, the error was harmless under the circumstances of this case (see People v Ortiz, 100 AD3d 419, 420 [1st Dept 2012], lv denied 20 NY3d 1014 [2013]; People v Segarra, 46 AD3d at 364; compare People v Cerda, 40 NY3d 369, 378 [2023]; People v Deverow, 38 NY3d 157, 168 [2022]; People v Becraft, 198 AD2d 868, 868 [4th Dept 1993]).
Defendant next contends that the People engaged in prosecutorial misconduct depriving him [*7]of a fair trial, directing his arguments at two distinct acts. The first contention, that the People improperly elicited Molineux evidence of uncharged prior bad acts through references to uncharged criminal acts in his recorded confessions, is unpreserved (see People v Delacruz, 207 AD3d 652, 653 [2d Dept 2022], lv denied 39 NY3d 1072 [2023]; People v Davis, 144 AD3d 1188, 1190 [3d Dept 2016], lv denied 28 NY3d 1144 [2017]). In any event, County Court provided an appropriate charge to disregard any reference to the individual mentioned in the recording that was not the subject of the charges in the indictment (see People v Braithwaite, 126 AD3d 993, 995 [2d Dept 2015], lv denied 25 NY3d 1198 [2015]; People v Tinkler, 105 AD3d 1140, 1143 [3d Dept 2013], lv denied 21 NY3d 1020 [2013]; compare People v Nicholas, 130 AD3d 1314, 1317 [3d Dept 2015]). As to the brief reference during the People's summation suggesting that defendant's criminal conduct occurred "all the time," County Court quickly provided a curative instruction (see People v Mata, 174 AD3d 647, 648 [2d Dept 2019], lv denied 34 NY3d 982 [2019]; People v Keizer, 157 AD3d 903, 905 [2d Dept 2018], lv denied 31 NY3d 1014 [2018]; People v Story, 81 AD3d 1168, 1169 [3d Dept 2011]) and, in any event, the record does not reflect that the statement was part of a flagrant and pervasive pattern causing substantial prejudice to defendant, particularly considering the overwhelming evidence of defendant's guilt (see People v Rivers, 18 NY3d 222, 227 [2011]; People v Graham, 215 AD3d 998, 1008 [3d Dept 2023], lv denied 40 NY3d 928 [2023]; People v Lombardo, 200 AD3d 1479, 1481 [3d Dept 2021], lv denied 38 NY3d 929 [2022]; People v Story, 81 AD3d at 1169). Accordingly, we find that County Court properly denied defendant's request for a mistrial on that basis.
We also find no merit to defendant's claim that he was denied the effective assistance of counsel. "In order to sustain a claim of ineffective assistance of counsel, a court must consider whether defense counsel's actions at trial constituted egregious and prejudicial error such that the defendant did not receive a fair trial" (People v Machia, 206 AD3d 1272, 1277 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 38 NY3d 1151 [2022]). As to counsel's failure to object to the specificity of the indictment, our review satisfies us that the indictment "is valid on its face and does not suffer from the lack of specificity charged by defendant" when considering the nature of the offenses and the victims' ages (People v Addison, 219 AD2d 782, 783 [3d Dept 1995]; see People v Adams, 59 AD3d 928, 929 [4th Dept 2009], lv denied 12 NY3d 813 [2009]; see also People v Campbell, 17 AD3d 925, 926-927 [3d Dept 2005], lv denied 5 NY3d 760 [2005]).[FN3] Accordingly, the failure to move for such relief does not establish that counsel was ineffective (see People v Rivera, 212 AD3d 942, 949 [3d Dept 2023], lv denied 39 NY3d 1113 [2023]; People v [*8]White-Span, 182 AD3d 909 [3d Dept 2020], lv denied 35 NY3d 1071 [2020]). As to the absence of any request by counsel to redact those portions of defendant's recorded confession referencing an individual that was not the subject of any of defendant's charges, we reiterate that County Court charged the jury to disregard any reference to that individual and, in any event, we do not perceive any deficiency in counsel's representation relative to such evidence. Finally, while defendant now second-guesses counsel's strategy of eliciting testimony that defendant engaged in sexual conduct with the victims "all the time," it is evident that doing so was intended to cast doubt on the credibility of the victims' accounts and create reasonable doubt as to whether their allegations were fabricated (see People v Burton, 215 AD3d 1054, 1062-1063 [3d Dept 2023], lv denied 40 NY3d 927 [2023]; People v Perry, 148 AD3d 1224, 1226 [3d Dept 2017]). To this end, our review of the record satisfies us that counsel provided meaningful representation by pursuing a reasonable defense theory, making competent objections and engaging in meaningful cross-examination during trial, all of which resulted in defendant's acquittal on three counts of the indictment (see People v Rivera, 212 AD3d at 949; People v Santana, 179 AD3d 1299, 1302 [3d Dept 2020], lv denied 35 NY3d 973 [2020]; People v Echavarria, 53 AD3d 859, 864 [3d Dept 2008], lv denied 11 NY3d 832 [2008]).
Finally, we reject defendant's contention that his sentence is unduly harsh and severe. Considering the significant nature of the criminal conduct at issue and the effect on the child victims, alongside the fact that defendant received concurrent sentences that altogether resulted in a maximum term of imprisonment far less than the permissible statutory range for his class B felony convictions (see Penal Law § 70.02 [1] [a]; [3] [a]), we find no justification to modify his sentence (see People v Kimball, 213 AD3d 1028, 1029 [3d Dept 2023], lv denied 40 NY3d 929 [2023]; People v Blauvelt, 211 AD3d 1175, 1176 [3d Dept 2022]; People v Brassard, 208 AD3d 1513, 1514 [3d Dept 2022]). Defendant's remaining contentions, to the extent not explicitly addressed herein, have been considered and found unavailing.
Clark, J.P., Lynch, Reynolds Fitzgerald and Powers, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: Count 2 pertained to victim A, count 4 pertained to victim B, count 5 pertained to victim C, and counts 6 and 7 pertained to victim D.

Footnote 2: The People introduced the victims' respective school records, which, in connection with the victims' testimony pertaining to the grade of school they were in, established their respective ages at the time of defendant's conduct.

Footnote 3: In his reply brief, defendant acknowledges that his argument pertaining to the lack of specificity as to the time frames identified in the indictment may only be raised in the context of his ineffective assistance of counsel argument, as it does not raise a jurisdictional defect and is otherwise unpreserved (see People v Slingerland, 101 AD3d 1265, 1265-1266 [3d Dept 2012], lv denied 20 NY3d 1104 [2013]; see also People v Smith, 137 AD3d 1323, 1325 [3d Dept 2016], lv denied 28 NY3d 974 [2016]).